Rockingham,  }
    Dec. 4, 1902.  }

## FIRST NATIONAL BANK OF PORTSMOUTH v. PORTSMOUTH SAVINGS BANK.

Mutual covenants by the owners of contiguous portions of a building, which provide that no change in the front thereof or in the principal entrance thereto shall be made by either party without the consent of the other, are to be construed as grants of negative easements for the benefit of the respective properties ; and such easements are extinguished by subsequent alterations, made by common consent, which are so substantial in character as to virtually defeat the purpose of the original agreement.

Whether in a particular case equity requires the issuance of an injunction to restrain threatened building alterations which will violate an agreement between contiguous owners, is a question of fact to be determined in the superior court.

Where a stairway constructed by adjoining owners upon the land of both has been used by common consent for more than twenty years as a means of access to their respective buildings, neither party thereby acquires a prescriptive right to an easement in the other's property.

Bill in Equity, for an injunction. Transferred from the April term, 1902, of the superior court by *Young*, J. The allegations of the bill are in substance as follows:

September 13, 1869, the plaintiffs and the defendants, being tenants in common of certain real estate in Portsmouth, and occupying separate portions of the building thereon for the business of their respective institutions, made partition of the property by mutual deeds of release. By the terms of the deeds, the plaintiffs became the owners of that portion of the realty lying south of a line drawn through a partition wall then existing between the north and south rooms of the building; the defendants became the owners of that portion lying north of the line; and the two corporations have ever since occupied their respective portions in severalty.

February 8, 1870, the parties further agreed in writing that the north side of a brick wall erected by the plaintiffs as the north wall of their directors' room should remain as it then stood, and should be the line of partition, the rest of the line remaining as fixed by the deeds of 1869; and in consideration of this agreement, the plaintiffs conveyed to the defendants the right to use the side wall of the directors' room, through its whole length or any part thereof, as a party wall. It was further agreed in writing that no change in the front of the building, or in the principal entrance thereto, should be made by either party without the consent of the other. At the time the second agreement was made, there was a common entrance in the center of the building, leading by steps to the right into the banking rooms occupied by the plaintiffs, and to the left into those occupied by the defendants. The stairways leading to the second story were separate, that to the rooms of the plaintiffs being located in the tower or wing at the extreme southerly part of the building, and that to the rooms of the defendants being in a tower or wing at the northerly end.

About 1881, both parties assented to changes in the first story front of the building and the principal entrance. In accordance with their agreement, the front wall to the first story of the main portion of the building was brought forward flush with its wings;

independent entrances to the banks were made in what previously constituted the wings; and an entrance and stairway to the offices above were built in the front thus brought forward, and have ever since been used in common as the only means of access to the second story.  The division line at this stairway is through the center thereof, the rooms in the second story on the right of that line belonging to the plaintiffs, and those on the left, to the defendants.

The defendants now desire to remodel their part of the front of the building, and threaten to make radical changes therein; and in so doing, they intend to incorporate into their building half of the stairway to the second story.  They claim that the agreement has been acted upon, and is now obsolete and extinguished; that they have the right to remodel the front of their building, and, in so doing, to obstruct or use their half of the stairway.  The plaintiffs deny the right of the defendants to alter the front of the building or to obstruct the stairway; they allege that they will be damaged by the proposed change in the building, and that the obstruction of the stairway will render the second story inaccessible and of little value.

The prayer of the bill is for a determination of the rights of the parties under their contract as to any changes in the front of the building, and of the right of the defendants to disturb, change, or injure the access over the stairway used in common; and as the defendants threaten to begin work at once, the plaintiffs ask for an injunction to restrain them from so doing.

The defendants' demurrer was overruled, subject to their exception.

*Eastman & Hollis*, for the plaintiffs.

*Frink & Marvin*, for the defendants.

BINGHAM, J.  The mutual covenants contained in the agreement of February 8, 1870, in which it was provided "that no change in the front of said building or in the principal entrance thereto shall be made by either party without the consent of the other," are to be construed as grants of negative easements for the benefit of the respective properties; and as the parties to this action and the agreement are the same, it is unnecessary to determine whether the covenants run with the land, and would be obligatory upon the successors and assigns of the contracting parties, though not named.  *Foster* v. *Foster*, 62 N. H. 46, 55; *Harriman* v. *Park*, 55 N. H. 471; *Burbank* v. *Pillsbury*, 48 N. H. 475; *Morse* v. *Aldrich*, 19 Pick. 449, 453; *Whitney* v. *Railway*, 11 Gray

359; *Richardson* v. *Tobey*, 121 Mass. 457; *Norcross* v. *James*, 140 Mass. 188; *King* v. *Wight*, 155 Mass. 444; *Whittenton Mfg. Co.* v. *Staples*, 164 Mass. 319; *Columbia College* v. *Lynch*, 70 N. Y. 440, 444.

Similar restrictions are commonly found in agreements of this nature, and it cannot be doubted but that the purpose of those here in question was legitimate. The only restraint upon such contracts is that they shall be reasonable and lawful. In whatever form such restrictions are placed upon real estate by the terms of a grant, whether by mutual covenants, by a condition, covenant, reservation, or exception in a deed, or by words which give to the acceptance of a deed by a grantee the force and effect of a parol agreement, they are binding as between the parties to the contract, and can be enforced both at law and in equity. *Foster* v. *Foster, supra; Burbank* v. *Pillsbury, supra; Emerson* v. *Mooney,* 50 N. H. 315.

While it is recognized law that an easement in real estate can be acquired only by deed, or by prescription which presupposes a grant (*Hallett* v. *Parker,* 68 N. H. 598; *Tibbetts* v. *Tibbetts,* 66 N. H. 360; *Batchelder* v. *Hibbard,* 58 N. H. 269; *Houston* v. *Laffee,* 46 N. H. 505), it is held that an easement, whether acquired by grant or prescription, may be extinguished, renounced, or modified by a parol license granted by the owner of the dominant tenement and executed by the owner of the servient tenement (*Morse* v. *Copeland,* 2 Gray 302; *Boston & Providence R. R.* v. *Doherty,* 154 Mass. 314); and that when the parol license has been executed by the servient owner, a release of the easement may be decreed upon a bill filed for that purpose. And this is true whether the easement is affirmative or negative in its nature. *Joyce* v. *O'Neal,* 64 N. H. 91, 92. The important question therefore in this case is, whether the plaintiffs' easement in the defendants' property has been extinguished, renounced, or modified by the mutual agreements under which the front to the first story of the building was remodeled and changed, and the common entrance to the banks "done away with."

In the interpretation of contracts, an equitable result is generally reached if due effort is made to ascertain the fact of the parties' intention from competent evidence by balancing probabilities. *Smith* v. *Furbish,* 68 N. H. 123, 139. The plaintiffs' bill discloses that in 1881, the parties by common consent remodeled and changed the "first story front" of the building, and did away with the common entrance to their banks, making entirely separate and independent entrances thereto. These changes were substantial; they altered the appearance of the entire front, and established new approaches and entrances to the building. The

front wall to the first story of the main portion of the building was brought forward flush with its wings; independent entrances to the banks were made in what previously constituted the wings; and an entrance and stairway were made to the offices above, in the front thus brought forward.   Under these circumstances, it is more probable than otherwise that the parties understood that they were extinguishing the restrictions so far as they related to the common entrance and the front of the first story of the building, and such was the legal effect of their acts.

While this may not be true of the restrictions upon the balance of the front of the building, it does not necessarily follow that an injunction should issue restraining changes therein.   A court of equity does not enjoin the performance of every contract, even where specific execution is found to be its legal intention and effect.   It gives or withholds such decree according to its discretion, in view of the circumstances; and a prayer for relief is not granted when it would be inequitable to do so.   2 Sto. Eq. Jur. (13th ed.), ss. 742, 750; Jackson v. Stevenson, 156 Mass. 496, and cases there cited.   The purpose of the agreement of 1870 was to preserve the appearance of the front of the building, including the principal entrance, as it then existed.   Since then, changes of so substantial a nature have taken place as to virtually do away with that purpose; and inasmuch as the present state of the property has resulted from causes other than a breach of the restrictions, and their enforcement would apparently fall far short of effecting the purpose for which they were originally made, and tend to lessen the value of the defendants' property for business purposes, the question arises whether under all the circumstances equity requires that an injunction should issue restraining the defendants from changing the front of the second story of their building. This is a question of fact to be determined in the superior court. If it would be inequitable to grant the injunction, then the plaintiffs should be left to their remedy at law for any damages they may suffer by reason of changes in the front to the second story; otherwise, the injunction should issue restraining the defendants from making any changes therein.

While the entrance and stairway to the second story have been used in common for over twenty years, it is not alleged in the plaintiffs' bill that their use has been adverse and under a claim of right.   On the contrary, their use, like their construction, appears to have been with the consent of the parties.   Such being the case, neither party acquired a prescriptive right to use the other's half of the entrance and stairway (Taylor v. Gerrish, 59 N. H. 569, 571), and no right to their use could be acquired by parol.   Tibbetts v. Tibbetts, and cases cited supra.

*Exception overruled.*

All concurred.