Under the homestead act of 1868 (Laws 1868, c. 1, s. 33; G. L., c. 138), the homestead right being a life estate, the reversion of the homestead may be taken upon execution.

Where several parcels of land are set off on the same execution, the debtor is not entitled to redeem one parcel without redeeming the others, although the value of each parcel is separately stated in the certificate of the appraisers.

BILL IN EQUITY, alleging that October 21, 1875, the defendants recovered a judgment against one Putnam for $2,009.39; that execution was issued thereon November 4, 1875, returnable on the first Tuesday of May, 1876; that at the date of the judgment Putnam was the owner of considerable real estate in Weare, including a homestead, which he and his family occupied and have continued to occupy since that time to the present; that, on the application of Putnam, a homestead was set off by metes and bounds; that December 31, 1875, all the real estate of Putnam, including the reversion of the homestead, was set off to the town on execution; that the reversion of the homestead was separately appraised at $125; that April 28, 1876, Putnam, being seized and in the actual occupation and possession of the homestead on that date, mortgaged the same to the plaintiffs to secure $285; that within one year from the return day of the defendants' execution, to wit, June 1, 1876, they tendered to the defendants the sum at which the reversion of the homestead was set off, with interest thereon from the time of the levy; that the defendants refused to receive the same; that the plaintiffs are now ready and willing to pay the same, and bring the same into court for that purpose; that the extent upon the reversion is a cloud upon the plaintiffs' title, and they pray for its removal and for general relief. The defendants demurred.

*Cross & Taggart*, for the plaintiffs. The attachment and levy upon the homestead were illegal and void, and the defendants are not entitled to anything under the levy. The homestead cannot be attached, and no levy can be made upon it. G. L., c. 138, ss. 1, 18, and c. 237, s. 1; *Fogg* v. *Fogg*, 40 N. H. 282; *Tucker* v. *Kenniston*, 47 N. H. 267. If not void, then the tender by the plaintiffs of the amount of the appraisal of the reversion of the homestead, if there be any such thing, was such as to discharge the cloud upon the equitable title of the plaintiffs.

*C. R. Morrison*, for the defendants. All of the debtor's real estate was set off on the same execution and as a part of the same levy, but with separate appraisals. There is no justice in allowing

a redemption of one only. It was early decided that it cannot be done (*Atherton* v. *Jones*, 1 N. H. 363), and there has been no such change in the terms of the statute as to indicate an intention to change the law,—the reason and justice of the creditor's right to receive the whole of his money, or retain the whole of the land, remaining as before. *Tomson* v. *Ward*, 1 N. H. 9; *Blanding* v. *Sargent*, 33 N. H. 239–246; *Frink* v. *Pond*, 46 N. H. 125, 126; *Heywood* v. *Benton*, 51 N. H. 304–309; *Currier* v. *Gilman*, 55 N. H. 364–369, 370. There have been similar holdings, as in *Atherton* v. *Jones*, *supra*, in other states. *Bond* v. *Bond*, 2 Pick. 382–386; *Foss* v. *Stickney*, 5 Me. 390.

CLARK, J. By the homestead act of 1851, the family homestead of the head of each family was exempted to him and to his widow and minor children so long as they continued to occupy it. Under this act the exemption to the debtor was an exemption of the entire estate in the homestead, leaving no reversion subject to levy or sale. *Tucker* v. *Kenniston*, 47 N. H. 267. But the homestead right of the widow was no more than a conditional life estate, a mere right of occupancy. In *Norris* v. *Moulton*, 34 N. H. 392, 397, it is described as "a right to use and occupy for life;" and in *Judge of Probate* v. *Simonds*, 46 N. H. 363, 368, *Perley*, C. J., says, of the widow's right of homestead under the act of 1851,— " Her interest was a mere personal right to occupy during her life. It was no estate that she could transfer to another. . . . The purchaser at an administrator's sale of land subject to a homestead right of the widow, when she ceased to occupy in person would hold the land discharged of her right." By the act of 1868 the homestead law was materially changed. Under this act the homestead right was secured to the wife, widow, and children of every person owning and occupying a homestead, for and during the life of such wife or widow and the minority of such children. Laws 1868, c. 1, s. 33. The homestead right thus exempted is not the entire estate in the homestead, but a life estate merely. The language of the statute admits of no other construction. In *Tidd* v. *Quinn*, 52 N. H. 341, 344, 345, *Sargent*, C. J., says,—" We think that under the law of 1851, and also under that of 1868, the wife cannot be considered—at least while the husband lives—as having any vested estate in the premises until her homestead has been assigned to her; . . . and when thus assigned to her, her inchoate and imperfect right becomes a vested and perfect conditional estate for life in the wife or widow, which could then, and not till then, be set up as a defence to a writ of entry, or an action of trespass *quare clausum fregit*." And this construction of the statute is not controlled by the fact that in certain cases when the premises occupied as a homestead cannot be divided, provision is made for a sale, and the sum of $500 is exempted from the proceeds. The absolute exemption of the sum of $500 in such cases is a special

exception to the general provisions of the statute. All real estate, except the homestead right, may be taken on execution (Gen. St., c. 218, s. 1); and the homestead right being only a life estate, when the town of Weare made its levy the reversion of the homestead was subject to the levy.

The levy upon the reversion of the homestead was separate from the levy upon the other real estate set off on the same execution. The plaintiffs claim the right to redeem from the homestead levy under a mortgage subsequent to the levy. By virtue of their mortgage, the plaintiffs have acquired the debtor's right of redeeming the homestead. Can a debtor redeem one of two parcels of land set off on the same execution, and separately appraised, without redeeming the other? Has he the right to redeem a part of the land set off without redeeming the whole ?

The right to redeem real estate taken on execution as well as the right to levy upon it, is regulated wholly by statute. Gen. St., c. 218, s. 1, provides that "All real estate, except the homestead right, may be taken on execution, and shall be appraised and set off to the creditor at its just value, in satisfaction of such execution and the cost of levying, except in cases where a sale of it is authorized." Sec. 2. "The officer levying such execution shall cause three appraisers to be appointed . . . who . . . shall be sworn by a justice impartially to appraise such real estate as shall be shown them as the estate of the debtor." Sec. 5. "A levy commenced by the appointment and swearing of one or more of the appraisers may be completed before the return day of the execution." Sec. 6. "Such appraisers shall set off to the creditor, by metes and bounds, or other distinct description, the real estate appraised by them, or so much as may be necessary in payment of the execution and costs of levying." Sec. 12. "All the debtor's interest in such real estate shall pass by the levy as against all persons, if the levy is recorded as aforesaid on or before the return day of the execution." Sec. 13. "Such extent shall be void, if, within one year from the return day of the execution, the debtor or any person interested pays or tenders to the creditor the sum at which such real estate was set off, with interest thereon from the time of levy; all sums paid for lawful taxes, and such reasonable expenses as have been incurred in insuring, repairing, and improving the premises, deducting therefrom the rents and profits received or which might have been received by the creditor or person having his estate, and with which he is justly chargeable." Sec. 21. "The creditor or person having his estate, upon payment or tender to him of the amount as aforesaid to be paid for redeeming such estate, having his reasonable charges tendered to him therefor, shall execute to the debtor a release of all right acquired by the levy."

There is no provision of the statute requiring a separate appraisal of each piece of land when more than one piece is levied

upon. Throughout, the levy is treated as entire and not severable. The debt is paid to the extent of the appraised value of all the land set off, whether it consists of one piece or several; and the sum required to be paid or tendered in order to redeem is "the sum at which such real estate was set off." There is nothing in the statute giving the debtor the right to redeem one piece of land without redeeming the others embraced in the same levy ; nor is it reasonable to permit him to do so. The creditor is compelled to take the land at its appraised value, instead of the money to which he is entitled. The debtor's rights are protected by his right of redemption at any time within one year. If he chooses to redeem, he should redeem the whole land. If the creditor is compelled to take land instead of money in payment of his debt, he should be allowed to retain all the land set off ; otherwise the debtor might redeem a portion which had increased in value during the year allowed for redemption, and compel the creditor to retain at its appraised value the remainder, which may have largely depreciated in value during the same time. For these reasons a debtor is not entitled, without the assent of the creditor, to redeem a part only of the real estate set off on the same execution.

A like construction has been applied to similar statutes in Massachusetts and Maine. *Bond* v. *Bond*, 2 Pick. 382 ; *Peabody* v. *Minot*, 24 Pick. 329 ; *Hannum* v. *Tourtellott*, 10 Allen 494 ; *Foss* v. *Stickney*, 5 Me. 390. This view is also supported by *Atherton* v. *Jones*, 1 N. H. 363. That case arose under the statute of February 15, 1791, which was different in terms from the present statute. It required the debtor to tender and pay " the full of the debt and charges mentioned in the execution. . . ." But the construction put upon the statute of 1791 was similar to the present statute. In *Burnham* v. *Aiken*, 6 N. H. 306, 324, *Richardson*, C. J., says,—" It is believed always to have been the understanding of the bar, that in all cases where an execution was in part satisfied by an extent upon land, the debtor might redeem under that statute by paying the appraised value of the land. Such a case was clearly within the equity of the statute." Where an execution against several debtors is extended upon land of which they are severally seized, each debtor may redeem his own land by paying its appraised value. *Burnham* v. *Aiken, supra*.

*Demurrer sustained.*

STANLEY, J., did not sit : the others concurred.