Rockingham, }
  June, 1899. }

## Pearson, *Assignee*, v. Gooch & a.

By an assignment in insolvency, the assignee acquires the right of the debtor to sue for usurious payments upon a promissory note, under P. S., c. 203, s. 3.

Where an order for the payment of money is accepted with the qualification that the sum named therein is to be credited upon the debt of the payee to the acceptor, the assent of the payee is essential to such an application of the funds.

Where a foreclosure sale is set aside upon a bill to redeem by the mortgagor's assignee in insolvency, the purchaser at such sale is entitled to recover sums expended in good faith for improvement of the property, so far as its value has been increased thereby.

Bill in Equity, to redeem from a mortgage. Facts found by the court. The plaintiff is assignee of the estate of William P. Burke, decreed insolvent upon petition of his creditors filed October 3, 1896. For several years Burke had been a large manufacturer of brick upon a yard in Fremont in this county. The defendants, Gooch & Pray, were building contractors located in Boston, Mass., and used great quantities of brick in their business. Burke had no dealings with them previous to November, 1894. In that month, prior to the 27th day, he and Gooch & Pray made, in Boston, a parol agreement by which they were to loan him $7,000 upon his note, payable, with interest semi-annually, $2,000 in one year, $2,000 in two years, and the balance in five years from date, secured by a mortgage of his brick-yard and other real estate, and he was to sell them five hundred thousand brick at $2.40 per thousand, which was $2.10 a thousand below the market value. The agreement was subsequently carried into effect, Burke giving Gooch & Pray his note, dated November 27, 1894, for $7,000, payable as above stated, secured by a mortgage of said real estate, and also a receipted bill for five hundred thousand brick at $2.40 per thousand, to be loaded on the cars at Fremont in this county, and Gooch & Pray paying him $8,200. The note and mortgage were made and executed in this county. The receipted bill is dated at Exeter in this county, but it did not appear where it was in fact made and signed. Burke subseqently delivered the brick in accordance with the bill. Gooch & Pray would not have made the loan but for the contemporaneous purchase of brick at the low price. Burke made the price to induce them to make the loan, and also to secure trade from them, it being understood that the payments upon the note were to be made in brick,

although the note does not so state.   The plaintiff claims (under P. S., *c.* 203, *s.* 3) that $1,050 (the difference between the market value and the agreed price of the brick) should be deducted from the principal of the note.   This question of law is reserved. The law of Massachusetts bearing on the question is made a part of the case.

Interest upon the note to November 27, 1895 ($420), and the $2,000 of principal then due, were paid in brick.

September 25, 1896, the defendant William A. Sanborn bargained with Burke for the purchase of one million brick, then in his yard in kilns, at $4 per thousand, and paid him $1,000 in cash, gave him an order on Gooch & Pray for $2,000, and on September 28 paid him the balance ($1,000) in cash.   The order was accepted in the following terms: " We accept the above order with the full understanding it 's to be indorsed upon note of W. P. Burke of $5,000.   G. & P., Sept. 25, '96."   Burke fled to Canada September 28, leaving the order in possession of his son, who had been and was his agent in the care and management of his business.   The men who made the brick had liens upon them for labor, and by due process of law appropriated them to the payment of the lien claims.   Sanborn attempted to hold the brick as against these claims, but failed.   Consequently he never received any portion of the brick, and the consideration for the order entirely failed.   As soon as Sanborn learned of the situation, and within two or three days after Burke absconded, he notified Gooch & Pray not to pay the order, and it was not presented for indorsement or payment until it was produced at the hearing, and has never been indorsed on the note. The question whether, upon these facts, it should be indorsed upon or applied to the payment of the note is reserved.

October 24, 1896, Gooch & Pray, under the power in the mortgage, sold the real estate therein to Sanborn, who, after purchasing, enlarged and improved the brick-yard and sheds, thereby increasing the capacity of the yard for making brick. The changes were made in good faith, and correspondingly increased the value of the property.   But for these changes, a less quantity of brick would have been made during the past two seasons, and a fair price for the use of the yard would have been less than is allowed therefor.   The sale to Sanborn was subsequently held to be irregular and void.

Subject to the plaintiff's exception, the following items were allowed Gooch & Pray:

| | | |
|---|---|---|
| Grading and extending brick-yard | . . | $835.39 |
| Addition to sheds . . | . . . . | 500.00 |
| Two pumps . | . . . . . . | 16.00 |

*Greenleaf K. Bartlett* and *William H. Drury*, for the plaintiff.

*Arthur O. Fuller, Henry A. Shute,* and *John S. H. Frink,* for the defendants.

PIKE, J.   1. Upon the facts appearing in the case, the contract between Burke and Gooch & Pray was a New Hampshire contract.  The loan which Gooch & Pray made to Burke was in consideration of his sale of bricks to them at a price $1,050 below the market value.  They "would not have made the loan but for the contemporaneous purchase of brick at this low price."  The understanding that the payments upon the note were to be made in brick, which gave rise to Burke's hope or expectation of securing trade from Gooch & Pray, formed no part of the consideration for the loan.  The note was payable in money, and there was nothing in its terms from which such an understanding could be gathered.  The advantage resulting from this sale was a $1,050 bonus, which, as a usurious payment, should be applied as of the date of the note in reduction of the principal thereof (P. S., c. 203, s. 3), unless Burke's right to the application does not pass to his assignee in insolvency.

The purpose of the legislature in enacting chapter 201 of the Public Statutes was to provide for the relief of insolvent debtors, and to insure an equitable distribution of their estates among their creditors.  By its terms, all of the "debtor's property, not exempt from attachment," passes under the assignment.  The right to sue for usurious payments is not included within the exemption, and the inquiry is whether such a right is "property" within the meaning of the statute, so that it passes by virtue of the assignment to the assignee.

A right to sue for a usurious payment is a chose in action, upon which judgment is as readily obtainable as upon any debt. It may be a substantial part of the debtor's estate, the collection of which may materially increase the assets from which the creditors must be paid.  It is as useful and as available to the assignee as any other debts that may be due to the estate.  It certainly is "property" within the common acceptation of the word, and appears to have been intended by the legislature to pass with other choses in action to the assignee of the debtor's estate.

Although this right to sue is personal in its nature (*Gathercole* v. *Young,* 61 N. H. 121, 123; *Bank of Newbury* v. *Sinclair,* 60 N. H. 100, 109; *Savage* v. *Fox,* 60 N. H. 17; *Ladd* v. *Wiggin,* 35 N. H. 421, 429), it does not die with the person, but survives to his representative (*Steele* v. *Franklin,* 5 N. H. 376), and may be assigned so as to pass to the assignee.  *Jordan* v. *Gillen,* 44 N. H. 424, 426.

Under a similar statute of insolvency, it has been held in Massachusetts that the insolvent debtor's right to sue for the usurious payment passes to his assignee. *Gray* v. *Bennett*, 3 Met. 522; *Cutler* v. *Bubier*, 4 Gray 588, 589; *Tamplin* v. *Wentworth*, 99 Mass. 63. The bonus of $1,050 resulting from Burke's sale of brick should be credited upon the defendants' loan as of the date when the note was made.

2. The $2,000 should not be applied to the payment of the note. No privity of contract between Gooch & Pray and Burke arose in consequence of the indorsement of the qualified acceptance upon Sanborn's order. In effect, it was simply a refusal to accept the order according to its tenor, and became a proposition to Burke to credit him on his note with the sum named, instead of paying it as the order specified. Burke's assent to this proposition was essential before any obligation arose on the part of Gooch & Pray to pay the order as proposed. It does not appear that Burke ever assented to their proposition, and the order must be regarded as though no acceptance had been indorsed thereon.

3. The last three items in the mortgagees' charges were properly allowed, and the exception thereto is overruled. They were incurred in the improvement of the yard, in absolute good faith, by Sanborn, under the belief that the title he had obtained from the mortgagees was a valid one (2 Wash. R. P. *583), and the improvements correspondingly increased the value of the property. The party who seeks to redeem is not the mortgagor, but his assignee in insolvency. When he redeems, it will not be to hold the property as the mortgagor might wish to do, but to convert it into money as a part of the debtor's estate. P. S., c. 201, s. 25. By so doing he will naturally receive back the amount of the disputed charges in the increased price which the property will bring, and those who are entitled to the assets of the estate will thereby receive all that they would have received had no such improvements been made.

*Case discharged.*

CHASE and PEASLEE, JJ., did not sit: the others concurred.