Sullivan, }
April 4, 1916. }

### SMITH & SARGENT v. AMERICAN CAR SPRINKLER COMPANY.

The right to recover a forfeiture for the wilful cutting of trees, conferred by P. S., c. 244, s. 1, upon the person injured, was not abolished by Laws 1899, c. 31, s. 1.

Where a lease contains a covenant by the lessors that upon payment of a certain sum the right of the lessors to enter into the premises should be utterly extinguished and in lieu thereof the lessee should hold the premises by paying a nominal rent, if demanded, upon performance of the condition the title becomes practically a freehold clogged with such rent charge.

A thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers.

An oral promise to transfer land, if the promisee "go there and live and fix up the buildings," is sufficient to establish an equitable title upon proof of performance in reliance upon the promise.

The objection, that the statute on which an action is founded has been repealed, may be taken, though for the first time, in the supreme court.

An objection to the insufficiency of evidence must be made before the case is submitted, unless the omitted necessary fact is impossible of proof.

DEBT, upon c. 244, P. S., for a penalty for wilfully cutting trees. Plea, the general issue with a brief statement admitting the cutting but alleging the defendants' belief in their ownership of the land, and that the plaintiffs had no interest in it. Trial by jury and verdict for the plaintiffs. Transferred from the May term, 1914, of the superior court by *Branch*, J.

The land upon which the cutting was done was lot 31 in the third division in the town of Lempster, originally drawn to the right of the Glebe and known as "church land." The plaintiffs claimed title under a warranty deed of said lot 31 from Orrin R. Howard, dated Aug. 7, 1912, and traced title through a warranty deed from

Joe W. Bean to Howard, Jan. 19, 1911; a quitclaim deed to Bean from the Trustees of the Protestant Episcopal Church in New Hampshire, June 17, 1893; deed from the Trustees of Donations to the Protestant Episcopal Church, a Massachusetts corporation, to the grantor last above named, March 15, 1877, conveying to the grantees the so-called church lands in New Hampshire; copy conveyance by Alexander B. Griswold and two others, a committee authorized by a diocesan convention of the Eastern Diocese of the Protestant Episcopal Church to execute the same to the Trustees of Donations to the Protestant Episcopal Church, Dec. 27, 1812, conveying all the so-called church land in New Hampshire.

The plaintiffs also offered a lease from the Trustees of Donations to the Protestant Episcopal Church, dated March 30, 1826, to Laurin Beckwith of lot No. 31 in Lempster for the term of nine hundred and ninety-nine years; this lease was upon a yearly rent of three dollars. In it the trustees covenanted that the lessee, or his assigns, having paid to them all rent in arrears and having paid to them or their treasurer the sum of fifty dollars, the rent aforesaid and the right of said trustees to enter into said premises shall be utterly extinguished and in lieu thereof the said lessee or occupant or occupants of the premises shall hold and enjoy the demised premises by paying a mill a year only, if demanded. There was evidence that Phineas Richardson lived upon lots No. 32 and 31, which were known as the Phineas Richardson place, and that he owned the lease of lot 31, originally issued to Laurin Beckwith, and paid the rent on it for many years. Joe W. Bean, the grantor in the second deed of warranty introduced by the plaintiffs, was the son of Agnes Richardson Bean and the grandson of Phineas Richardson. He testified his grandfather and mother agreed to give him the place if he would go down there and live there and fix up the buildings, that he did so and the church lease was given him but there were no other writings. After receiving the lease, Bean went with it to George L. Farwell, treasurer of the Trustees of the Protestant Episcopal Church in New Hampshire, paid the back rent due on the lease and the fifty dollars and received the quitclaim deed introduced in the case. The defendants excepted to the introduction of this deed because authority for its execution in the officer executing the same was not shown. The deed bore on its margin a memorandum of a vote of the trustees, Nov. 17, 1892, authorizing the treasurer to execute the same, signed, George L. Balcom, clerk. The corporation records of the trustees, Nov. 17, 1892, did not con-

tain a record of such vote. The present clerk was permitted to testify subject to exception that it was possible votes were taken which were not recorded and that from his knowledge of Mr. Balcom he would expect he would not sign such a certificate unless it were true. The defendants also excepted to the evidence of the agreement between Joe Bean, his mother and grandfather.

The defendants offered in evidence a deed from Read Bros. dated Dec. 16, 1905, conveying "also that part of lot No. 31 in said third division of lots which is not known as church land;" deed Susie B. Hurd to Read Bros. with the same description, Dec. 1, 1905; quitclaim deed Geo. W. Hurd to Susie B. Hurd, July 13, 1904, containing the following: "also one other lot containing sixty-seven acres more or less of the said third division being lot No. 31;" tax collector's deed, Elbert E. Hurd to George W. Hurd, June 29, 1904, containing the same description. The record of the sale describes the property sold as "The Phineas Richardson farm (except such part of said farm as is owned separately from the other heirs by J. W. Bean)." The defendants also offered in evidence the following deeds: deed, Elisha A. Huntley to Agnes Bean, August 25, 1871, of "a certain tract or parcel of land situated in Lempster . . . known by the name of Timothy Green's heirs, supposed to contain seventy-five acres more or less; also all of our interest in or claim unto one other lot or tract of land situate in said Lempster, being lot No. 31 in the said division containing sixty-seven acres, more or less, and drawn to the right of the Glebe"; deed from Phineas Richardson to Elisha A. Huntley, July 20, 1871, conveying "a certain tract or parcel of land situate in Lempster aforesaid, it being the farm upon which I now reside," the remainder of the description being identical with the foregoing. Mrs. Hurd was a daughter of Agnes Richardson Bean, there being four other children living at Mrs. Bean's death besides Mrs. Hurd and Joe. Elbert E. Hurd, the husband of Susie B. Hurd, testified that he acted for his wife in making the trade, but subject to exception the court excluded the inquiry made of him by the defendants, whether the trade between him and Mr. Read called for the whole of Mrs. Hurd's interest in lot 31. The court understood the inquiry to mean whether Mrs. Hurd intended to convey not only the interest acquired by the tax title but also any interest she might have in lot 31 as an heir of her mother. The defendants excepted to evidence as to the value of the timber, which was received by the court from certain witnesses.

The defendants requested an instruction that in the absence of a writing Joe Bean did not acquire any interest in the land and that his only interest was as an heir of Agnes, which gave him one-sixth of her interest if she had any, and that if Susie B. Hurd had an undivided interest in the timber as heir of Agnes, which was conveyed to Read Bros. and by them to the defendants, they cannot be held in wilful trespass for cutting the same, and excepted to the refusal to give such instructions as were not given.

The court instructed the jury that the defendants had no title and that if Joe Bean was promised the farm and church land as he testified and if in reliance upon that promise he took possession and repaired the buildings and the lease was turned over to him in fulfilment of the promise, Joe acquired a complete equitable title sufficient to authorize the plaintiffs to maintain this action. There were no exceptions to the charge.

*Jesse M. Barton* (by brief and orally), for the plaintiffs.

*Joseph S. Matthews* and *Frank O. Chellis* (Mr. *Matthews* orally), for the defendants.

PARSONS, C. J. The defendants' contention that the statute upon which the action is founded has been repealed comes a little late but is clearly open to them. *Glover* v. *Baker*, 76 N. H. 261, 262; *Petition of Moebus*, 73 N. H. 350, 351; *Hutchinson* v. *Railway*, 73 N. H. 271, 272. It may be conceded that the action is not compensatory but punitory, that it is for a penalty, *Morrison* v. *Bedell*, 22 N. H. 234; *Janvrin* v. *Scammon*, 29 N. H. 280; *Coulombe* v. *Eastman*, 77 N. H. 368, and that the doing of an act to the performance of which a penalty is attached by statute is a violation of the statute. *Williams* v. *Tappan*, 23 N. H. 385, 391; *Roby* v. *West*, 4 N. H. 285, 287; *Bartlett* v. *Vinor*, Carth. 251; 1 Kent Com. *467.

It must also be conceded that *Moffie* v. *Slawsby*, 77 N. H. 555, is an authority which supports the defendants' present contention. *Moffie* v. *Slawsby* was placed upon the ground announced in *Bartlett* v. *Mansfield*, 76 N. H. 582, that "the private action for a penalty was abolished by chapter 31, Laws 1899." The statement was sound upon the facts in *Bartlett* v. *Mansfield* but in the use made of it in *Moffie* v. *Slawsby* there was no discussion of the question whether the application of the repealing statute was affected by the fact

that the right of recovery was by the statute inflicting the penalty
(P. S., *c.* 203, *s.* 2), limited "to the person aggrieved who will sue
therefor." The section inflicting the penalty is not recited in the
opinion and the possible distinction apparently escaped notice. In
all other cases where the statute has been construed to effect a re-
peal of private right to a penalty the right has been given to any
prosecutor or complainant or person who should sue therefor. *Hib-
bard* v. *Fertilizer Co.*, 70 N. H. 156; *State* v. *McConnell*, 70 N. H.
158, 159; *Noyes* v. *Edgerly*, 71 N. H. 500, 503.

The statute now involved, P. S., *c.* 244, *s.* 1, confines the right to
recover the penalty to "the person injured." The distinction is the
same as that presented but not discussed in *Moffie* v. *Slawsby*, and
is therefore fairly open for consideration.

The law of 1899 after providing that no complainant or prose-
cutor, with certain exceptions not now material, should be entitled
to any part of a fine or forfeiture imposed or collected under the
liquor statute (P. S., *c.* 112), continues: "and all other statutory pro-
visions whereby the complainant or prosecutor is entitled to the
whole or any part of the penalty imposed for the violation of any
other provisions of the Public Statutes, or amendments thereto,
are hereby repealed." Laws 1899, *c.* 31, *s.* 1. The subject of the
recovery sought in this case, and in *Moffie* v. *Slawsby*, is a penalty
imposed for the violation of a provision of the statute which the
statute by authorizing recovery gives to the prosecutor. But al-
though the statutes are penal, the limitation of the right of recovery
to the person "injured" or "aggrieved" indicates that the purpose
was to some extent remedial. If the repealing statute had said
"any person prosecuting or complaining," it would be clear the pur-
pose was to confine the repeal to cases where persons in no way
interested might engage in prosecutions for the profit thereby to
be obtained. The present action is within the terms of the repeal-
ing statute and would be also within a general purpose to repeal all
authority for the private enforcement of provisions purely penal,
but not within a purpose to repeal only such provisions as in effect
permitted any person to engage in the enforcement of the criminal
law for profit. That the present statute may be within the letter
of the repealing act is not sufficient, "a thing which is within the
letter of a statute is not within the statute unless it be within the
intention of the makers." *Stanyan* v. *Peterborough*, 69 N. H. 372,
373; *Opinion of the Justices*, 66 N. H. 629, 647, 657. While the
question is by no means free from doubt, upon careful considera-

tion the conclusion is that the repeal was intended to be limited to provisions which gave to any person without reference to any interest in the matter a share in any penalty or forfeiture and that it was not intended to extend the repeal to provisions which might be regarded as in some sense remedial because the prosecution was limited to persons injured or aggrieved. The moving cause of the legislation was undoubtedly practices that had grown up or were suspected to exist under the liquor law. Under this statute, as in the case of the guide-board statute, there was at least a suspicion that prosecutions were moved for private profit purely. To cure this evil was the probable purpose of the repeal and the repeal was probably intended to extend only to statutes of exactly similar import and effect. So construed, the statute does not repeal *c.* 244, P. S.

The reason upon which *Moffie* v. *Slawsby* was placed is found to be untenable upon examination. Whether the result then reached as to the usury statute is sustainable upon any other ground is not material. The objection, that the statute upon which the action is founded has been repealed, is overruled.

This result renders it necessary to consider the exceptions taken in the superior court.

The statute in so far as material is, "Whoever shall cut, . . . wilfully and unlawfully any tree, . . . standing or being on the land of another . . . shall forfeit to the person injured . . . ." P. S., *c.* 244, *s.* 1. The defendants admitted the cutting but set up in their brief statement a belief in their ownership of the land and that the plaintiffs had no interest.

The issues set up, therefore, were whether the plaintiffs were persons injured within the meaning of the statute and did the defendants knowingly cut the trees believing they had no title to them? "To recover a forfeiture under this statute, the plaintiff must prove a wilful and malicious trespass. The statute was not intended to give a new mode of trying disputed titles." *Morrison* v. *Bedell*, 22 N. H. 234, 237. The plaintiffs were bound to prove themselves persons injured. If the plaintiffs owned the trees they would be injured by their destruction. Whether their character as the persons injured would be affected by the character of their title the case presents no occasion to decide. See *Davenport* v. *Newton*, 71 Vt. 11. The defendants appear to have proceeded upon the theory that a technical defect in the plaintiffs' title would invalidate their claim of injury. To prove their ownership the plaintiffs intro-

duced a warranty deed to them of the wood and timber on lot 31 in Lempster and a similar deed from Joe W. Bean to Howard of said lot 31 and offered a copy of a quitclaim deed from the Trustees of the Protestant Episcopal Church in New Hampshire to Bean and subsequently introduced the original deed. The deed was signed, "The Trustees of the Protestant Episcopal Church in New Hampshire by their Treasurer, George N. Farwell." The defendants objected to the admission of this deed without proof of authority in the treasurer to execute the same. This was an objection to the proof of execution. But after proof of an original deed to himself a party may use an office copy of a deed in the chain of title to himself as *prima facie* evidence without proof of the existence and loss of the original. *Harvey* v. *Mitchell*, 31 N. H. 575, 582, and an original deed with the certificate of record may be used in the same way. *Bellows* v. *Copp*, 20 N. H. 492, 503. The course of the trial rendered this deed immaterial. There was evidence of a lease of lot 31 by the owner preceding the grantor in this deed for nine hundred and ninety-nine years at a rent of $3 per year. The lease contained a covenant by the lessors that upon payment of the back rent and $50 the right of the lessors to enter into the premises should be utterly extinguished and in lieu thereof the lessee or occupant or occupants of the premises should hold and enjoy the said demised premises, by paying a mill a year only, if demanded. Bean, holding this lease, paid up the back rent and the fifty dollars. His title under the lease became practically a freehold clogged with a rent charge of one mill per year, if demanded. *Montague* v. *Smith*, 13 Mass. 396, 403.

That Phineas Richardson lived upon lots 32 and 31 which were known as the Richardson place and that he held lot 31 under a lease from the church was not controverted. Joe Bean was the grandson of Phineas and the son of Agnes Richardson Bean. Conveyance of lot 32 and of his interest in lot 31 to Agnes Richardson Bean from Phineas Richardson were in evidence. The defendants objected to evidence of an oral contract by which Joe's mother and grandfather agreed to give him the place if he would go there and live and fix up the buildings, which was carried out by him. The evidence was sufficient to establish Bean's equitable title and the defendants' exceptions to the evidence and to the court's failure to instruct the jury that the evidence failed to establish ownership in Bean are overruled. *White* v. *Poole*, 74 N. H. 71, 73; *S. C.*, 73 N. H. 403.

The competency of the witnesses who gave their opinion as to value was for the trial court.

The defendants excepted to inquiries as to statements made by a Mr. Dodge, superintendent of the defendants' lumbering operations in Lempster, as to the defendants' ownership. These exceptions have not been argued and are understood to have been waived. The testimony of Hurd as to what the trade was to be between his wife and Read may have been, if communicated to the defendants, competent in connection with other evidence as tending to show their good faith. It was incompetent upon the question of title; but while title would have been a good defence, that the defendants understood they owned the trees would have been equally as good a defence in this action. Whether there was evidence which was or could have been offered connecting the excluded evidence so as to make it material does not appear from the case. As the case stands, the excluded evidence tends to show, if anything, Read's understanding only, and so far as appears is immaterial upon the defendants' good faith.

Except as to the effect of the oral contract already referred to, the substance of the instructions requested appears to have been given, for the jury were told it was essential for the plaintiffs to establish the oral contract between Bean and his mother to enable them to maintain this action.

There was no motion for a nonsuit or directed verdict, the case being submitted without objection by the defendants.

After the verdict, the defendants moved to set the same aside as against the law and the evidence. This motion raises merely a question of fact as to the weight of the evidence which is determined by the superior court. It raises no questions of law which have not previously been preserved by exception.

Subsequently, the defendants asked an exception to the verdict upon the ground that the evidence was insufficient to warrant a verdict for the plaintiffs and that the facts presented by the record disclose that the deficiency is incapable of being supplied. The court refused to allow this exception upon the ground that the question as to the sufficiency of the evidence cannot be raised in this way, and transferred the question of law raised by this ruling.

The rule which requires a party to object to the sufficiency of the evidence before the case is submitted is based upon the reason that, if the objection is made known then, the deficiency may be supplied.

But if it appears from the record that the necessary fact is impossible of proof, the rule fails with the reason. The record at present does not sustain the claim. Until it is made to appear that the record does not, and cannot, by supplying omitted evidence, be made to sustain the verdict, the verdict must stand. *Farnham* v. *Anderson*, 74 N. H. 405.

*Exceptions overruled.*

YOUNG, J., dissented as to the interpretation of the statute: the others concurred.