Rockingham, }
Oct. 5, 1926. }

## WELLS C. SMITH v. CHESTER C. SMITH.

A contract or mortgage-stipulation whereby the mortgagor, as an inducement to the making of a loan, agrees to confer on the mortgagee some benefit other than the payment of interest, is valid and enforceable unless it annuls or restricts the right of redemption, is oppressive and unconscionable, or violates some legislative enactment.

Whether a stipulation in a contract is void as being usurious depends upon the law of usury in force when the contract was made.

Under P. S., c. 203, s. 3, a contract the effect of which would be to secure to the mortgagee the payment of a sum in excess of the legal rate of interest is unenforceable to the extent of such excess.

BILL IN EQUITY, praying that an express trust in certain real estate be decreed in the plaintiff's favor, and for an injunction. Chester C. Smith has died since the case was entered in this court, and the defense has been assumed by his executor. For convenience Chester C. Smith is referred to as the defendant.

The plaintiff was the defendant's son. In 1913 the defendant purchased a home for himself, paying $2,300 therefor. Of this sum, $2,000 was advanced by the plaintiff, who received a note payable two years after date, with interest at five per cent, secured by a mortgage on the property. The parties also entered into the following agreement: " . . . the said Wells C. Smith, party of the first part, hereby covenants and agrees to take a mortgage of $2,000 at 5% interest on the place bought of D. J. Flanders, and the said Chester C. Smith, party of the second part, in consideration of this agreement agrees and binds himself that when he, the said Chester C. Smith, sells or leaves the place at his decease, the said Wells C. Smith, for the payment of $300 shall have the place or shall have what it sells for less $300 to be paid to the estate of Chester C. Smith."

The question whether this agreement defeated the defendant's right of redemption or barred him from any right in the premises beyond the $300 invested by him was transferred by *Sawyer*, C. J., without a ruling.

*Perley Gardner* and *Ernest L. Guptill* (*Mr. Gardner* orally), for the plaintiff.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the executor.

MARBLE, J. The executor contends that the agreement is invalid because it contravenes the general rule that a mortgagor cannot divest himself of his equity of redemption by any provision in the mortgage or by any agreement collateral thereto. 3 Pom. Eq. Jur., s. 1193; 2 Washb. Real Prop., (6th ed.), s. 998; 1 Page, Con., s. 192; 24 A. L. R. 822; 19 R. C. L. 502.

On the other hand, the plaintiff claims that upon the execution of the contract he became, as between himself and the defendant, the real owner of the property subject to an informal mortgage for $300 in the defendant's favor.

It is a sufficient answer to the plaintiff's claim to point to the mortgage note. The defendant was the borrower, and the theory that his payment of taxes and interest was in reality the payment of rent is fanciful and unsupported by facts. The legal import of the written instruments is clear. The defendant had an absolute deed of the property as well as its beneficial use, while, apart from the mortgage, the plaintiff owned only an executory contract in the nature of an option, which he might or might not choose to exercise. *Hall* v. *Hall*, 70 N. H. 47, 48. If, as the plaintiff asserts, the documents do not express the real intention of the parties, there is no evidence before this court which would justify reformation even if that particular relief could be decreed.

So far as the mortgagor's right to redeem is concerned, there is nothing in the agreement which bars or in any degree curtails that right. Although the provision that the plaintiff should "have the place" was one of the terms of the loan, and therefore supported by adequate consideration (*Kann* v. *Company*, 81 N. H. 535, 540; *Webber* v. *Loranger*, 79 N. H. 3, 5; *Hutt* v. *Hickey*, 67 N. H. 411, 417), it was entirely independent of the mortgage. It did not relate to the payment of the loan but to the death of the defendant and to a possible sale of the property. The failure of the defendant to pay the note entitled the plaintiff to no greater remedy than that afforded by law to all mortgagees, and no collateral advantage could inure to him by reason of such failure. If he had foreclosed the mortgage, the defendant could have redeemed at any time within the statutory period by paying the plaintiff $2,000 with interest and costs. P. S., c. 139, s. 13 (P. L., c. 215, s. 16). During the defendant's lifetime he was entitled to occupy the premises with all the privileges of

ownership. He could have paid the note at its maturity and have had the mortgage discharged, leaving the property unencumbered.

It is true that there are cases which hold inoperative any contract or mortgage-stipulation whereby the mortgagor as an inducement to the making of the loan agrees to confer upon the mortgagee any benefit other than the payment of interest, but the better and more modern rule requires the enforcement of such contracts and stipulations unless they annul or restrict the right of the mortgagor to redeem the land from the lien of the mortgage, or unless they are oppressive and unconscionable, or violate some legislative enactment. 27 Cyc. 1099; *Kreglinger* v. *New Patagonia Meat &c. Co.*, [1914] A. C. 25; 6 B. R. C. 394; 83 L. J. Ch. N. s. 79; 109 L. T. N. s. 802; 30 Times L. R. 114; 58 Sol. Jo. 97; 51 Scot. L. R. 843; Ann. Cas. 1914B, 428.

The doctrine that "a man shall not have interest for his money and a collateral advantage for the loan of it, or clog the redemption with any by-agreement" has prevailed since the case of *Jennings* v. *Ward*, 2 Vern. 520. But in many of the cases which have followed *Jennings* v. *Ward* the failure to distinguish between an actual interference with the equity of redemption, on the one hand, and usury or extortion, on the other, has led to hopeless confusion. 21 Harv. Law Rev. 459, 468, 469.

In the *Kreglinger* case Viscount Haldane attributes the origin of the mortgagor's right to redeem to the influence of the church in the courts of the chancellors, and states that as early as the Council of Lateran, in 1179, we find "that famous assembly of ecclesiastics condemning usurers and laying down that when a creditor had been paid his debt he should restore his pledge." He refers with approval to the view of Lord Lindley in *Bradley* v. *Carritt*, [1903] A. C. 253, that "when the usury laws were in force, and when every device for evading them had to be defeated by equity, the proposition that everything that was part of the mortgage transaction must cease with it . . . was a convenient statement and as free from objection as most concise statements are, but that when the usury laws were abolished the language was too wide to be accurate."

The mortgage in the *Kreglinger* case was a floating charge on the defendant's business. The collateral agreement provided that for a period of five years the defendant should sell sheepskins to the plaintiffs and pay them a commission on all sheepskins sold to others. The defendant, having paid the loan before the end of the five-year period, claimed that the contract relating to sheepskins

was thereby terminated. In holding the agreement enforceable, Lord Parker says: "It is to be observed that stipulations for a collateral advantage may be classified under two heads — first, those the performance of which is made a term of the contractual right to redeem, and, secondly, those the performance of which is not made a term of such contractual right. In the former case in settling the terms on which redemption was allowed the court of chancery entirely ignored such stipulations. In the latter case, so far as redemption was concerned, the stipulations were immaterial, but it is said that in both cases the court of chancery would have restrained an action at law for damages for their breach. This is possible, though I can find no instance of its having been done, but clearly on a bill for an injunction to restrain an action at law the plaintiff would have to shew some equity entitling him to be relieved from his contract, and such equity could, I think, have been based only on the usury laws, or the public policy which gave rise to them.

"The last of the usury laws was repealed in 1854, and thenceforward there was, in my opinion, no intelligible reason why mortgages to secure loans should be on any different footing from other mortgages. In particular, there was no reason why the old rule against a mortgagee being able to stipulate for a collateral advantage should be maintained in any form or with any modification."

In *Tarleton* v. *Emmons*, 17 N. H. 43, the purchase of a winnowing-machine was made a condition of the loan. The court held that the loan might be found to be usurious, but there is no suggestion that the bargain was void because it constituted a clog on the equity of redemption.

Whether in any given instance the lender has taken an unfair advantage of the borrower's necessity is a question of fact. The mere making of a collateral bargain does not render the transaction unconscionable as a matter of law.

No evidence relating to the fairness of the arrangement in the present instance has been transferred. As the case stands here, the agreement is enforceable unless prohibited by statute.

The agreement was executed prior to the passage of Laws 1921, c. 121, repealing the usury law.

Webster defines usury as a premium or increase paid, or stipulated, for a loan of money or goods. It is usury if any benefit or profit designed by the parties as a reward to the lender for the use of his money amounts, together with the interest received, to more than the legal rate. *Tarleton* v. *Emmons, supra; Pearson* v. *Gooch,*

69 N. H. 571, 573. Whether or not the contract in question was usurious must depend upon the value of the mortgaged property.

The transaction is to be considered with reference to the law as it existed at the time the contract was made. P. S., *c.* 2, *s.* 35 (P. L., *c.* 2, *s.* 35); *Lakeman* v. *Moore*, 32 N. H. 410; *Farr* v. *Chandler*, 51 N. H. 545; *Hibbard* v. *Company*, 70 N. H. 156; *Noyes* v. *Edgerly*, 71 N. H. 500, 504. Even though usurious, the agreement was not void (P. S., *c.* 203, *s.* 3), nor was it affected by the provisions of Laws 1899, *c.* 31, relating to penalties. *Moffie* v. *Slawsby*, 77 N. H. 555; *Smith & Sargent* v. *Company*, 78 N. H. 152.

The plaintiff is not allowed, however, to receive compensation for the use of his money in excess of six per cent (*Pastore* v. *Priori*, 79 N. H. 1), and so far as the contract calls for any collateral benefit which would result in the payment of a greater sum, it cannot be enforced upon such facts as now appear. Whether there are facts to justify a reformation of the contract is a matter to be considered by the superior court.

*Case discharged.*

All concurred.