STANISLAS LEMAY, *Adm'r, App'ee,*

*v.*

ARTHUR LEMAY *& a.*

*Charles A. Perkins,* for the appellee.

*Boivin & Amyot,* for the appellants.

ALLEN, J.   The adult son admits that a homestead right inhered in the real estate.   His claim is that on the sale of the real estate the widower and minor children were not entitled to $500 out of the proceeds of the sale, but only to have that amount regarded as a fund in which their interests were of present values for the unexpired period

of minority as to the minor children and for the life of the widower as to him.

The statute on which the claim rests (P. L., c. 305, s. 6) provides that when a decedent's real estate with the homestead right included is sold under license, the surviving spouse and minor children "respectively shall be entitled to shares of the proceeds of the sale under such license, equal to the present value of the homestead right and dower in the real estate sold, to be estimated by the judge according to their ages"; with further provision for the disposal of the balance of the proceeds.

The immediately preceding section (s. 5) of the chapter authorizes license for the sale of the entire interest in the real estate, "including the homestead right and widow's dower, and the reversions thereof," with the assent of the surviving spouse if any and otherwise with the assent of the minor children's guardian.

The limitation claimed is clearly expressed. The homestead right is classified and treated in the same way as dower. Dower is a life estate and its present value is determinable by a formula employing the widow's age. The statute is incomplete in its omission expressly to mention the widower's curtesy right, but it would seem to be included by implication, and curtesy also being a life estate, its present value is to be ascertained by a similar formula as that for dower. Section 5, as it reads with its punctuation, declares that the license shall include the reversion of the homestead right as definitely as it does the reversion of dower. ·

These statutes relate primarily to probate law and only incidentally to the homestead right in its contact with probate law. It is therefore probable that they were intended to be in harmony with the general statutory view of the homestead right, and that there was a purpose, not to limit or establish an exception to the view tending to impair it, but to arrange for its application under the situation which they undertook to deal with. The aim was in part to enact some probate law in the light of the existing homestead legislation and to adapt it thereto, and not to weaken the broad purpose of the homestead legislation in its connection with probate law. If the probate law is shown by the context of other legislation to be inaccurately expressed under exact and precise tests of language, its real meaning is to be declared as the actual expression of the legislative will. *Stanyan* v. *Peterborough*, 69 N. H. 372, 373, and cases cited; *Smith & Sargent* v. *Company*, 78 N. H. 152, 156, 157; *State* v. *Railroad*, 70 N. H. 421, 431.

Thus considered, the literal construction of the statutes conforms with the general theory of the homestead right. The right is an interest of occupancy in five hundred dollars' worth of such title as the owner has. " . . . the statute estimates and measures the homestead right by value, and by nothing else . . . The character of the estate out of which a homestead is to be taken is therefore of no consequence, because, whatever may be the nature of such an estate, in duration or extent, if it is sufficient to support a homestead, the value of that right can alone be considered in its assignment." *Squire* v. *Mudgett*, 63 N. H. 71, 72.

But while it is an interest in property which has the fixed and constant value of $500, it is not the full title in such property and hence is not worth all of such value. It is ended, and hence has no value, when occupancy by those entitled is ended, except as the statute makes provision therefor in specified instances. And it is personal and may not be transferred. In *Judge of Probate* v. *Simonds*, 46 N. H. 363, the court thus considered an administrator's deed conveying property subject to the homestead right (*p.* 368): "The purchaser under such a sale takes the whole title in the land sold, except the widow's right of homestead . . . But her interest was a mere personal right to occupy during her life. It was no estate that she could transfer to another; . . . The purchaser at an administrator's sale of land subject to a homestead right of the widow, when she ceased to occupy in person, would hold the land discharged of her right." And in *Cross* v. *Weare*, 62 N. H. 125 it was held that the reversion of the right might be taken upon execution, since the right is less than a fee. As said in the opinion (*p.* 126): "The homestead right thus exempted is not the entire estate in the homestead, but a life estate merely . . . And this construction of the statute is not controlled by the fact that in certain cases when the premises occupied as a homestead cannot be divided, provision is made for a sale, and the sum of $500 is exempted from the proceeds. The absolute exemption of the sum of $500 in such cases is a special exception to the general provisions of the statute."

While the right depends upon occupancy for its continuance and a definite voluntary cessation of occupancy means the loss of the right (*Locke* v. *Rowell*, 47 N. H. 46), the law has undertaken to give some relief from the hardship of losing the right when its termination is involuntary. Besides the requirement for payment of $500 to the owner when the right is included in a sale of land upon execution, the amount due on an insurance policy when the homestead is dam-

aged by fire is exempt from attachment up to $500 less the value of the homestead remaining, under P. L., *c.* 356, *s.* 20, *cl.* VIII. Death may not be avoided, and the continuance of the right to the stated survivors of the owner is given, in the purpose to maintain a home for them. If in the course of the settlement of the owner's estate his home needs to be sold, it must be sold subject to the homestead right unless the surviving spouse, or the children's guardian if there is no such survivor, assents to have the sale include the right. This is a voluntary termination of the right. But the creditors in a sale of the full title have an advantage, since such a sale normally brings a better price for the interest in the title available to pay their claims than if such interest were sold separately by itself. The legislature accordingly deemed it proper that there should be some compensation for giving the assent, and the present value of the right at the time of the sale was regarded as a fair measure of its loss through surrender. Without some compensation assent would probably not often be given, and the payment as a practical expedient is at best no impairment of the general theory of the homestead right and in fact may be regarded as an extention of it.

Further supporting evidence of the legislative view of the homestead right as a life estate requiring its reversion to make up the full amount of $500 in value is found in the statutes (P. L., *c.* 308, *ss.* 1, 10) giving the probate court jurisdiction over the division and assignment of the right and its reversion, and authorizing the division and assignment of the reversion at its just value when the right is assigned, if those in interest request it.

Historically, in 1854 there was enacted for the first time a statute (Laws 1854, *c.* 1532) authorizing license to an administrator to sell the whole of a decedent's interest in his real estate when the widow assented, so as to include her dower as well as its reversions, she to be paid from the proceeds the present value of her dower according to her age. This statute was amended upon the adoption in 1867 of the General Statutes (G. S., *c.* 182, *ss.* 15, 16) so as to include the homestead right in such a sale, and the amendment gave the widow and minor children shares in the proceeds of the right to be determined in the same way as the statute now in force sets forth. This statute of 1867 has undergone no change except to add the widower as the party to give assent and as sharing in the proceeds in cases where the home belonged to the wife.

There is no evidence to show that the statute is not to be construed as it is literally worded, and the adult son's appeal is sustained.

The statute definitely gives the minor children shares in the present value of the right, to be estimated, as well as the widower's share, according to their several ages. In the estimate allowance is to be made for the effect of the arrival at age of each child respectively in giving the widower and remaining children larger interests, since the division is thereafter among a smaller number. After all the children have reached their majority, the widower's interest for each year remaining would be greater because it would not be shared with any of them. On the other hand, the present value of the use for each year varies in decreasing measure commencing from the first. Assuming the widower has an expectancy of life of 15 years, the present value of each year of use is not 1/15 of the full present value of the homestead right, but a progressive discount must be taken to produce relative equalities.

If $30 is called the value of a year's use of the homestead right, the full value of the use, discounting on a 4% basis, and giving it 15 years of duration as the widower's term of survivorship of his wife, is $333.54. Applying the same discount rate, the present value of the first 7 years of use is $28.84, $27.73, $26.67, $25.64, $24.66, $23.71, and $22.80 respectively, commencing with the first year. The oldest child, being 18 years of age at his mother's death, would have a ¼ interest in such present values of the first 3 years amounting to $20.81. The next child, a year younger, would have this $20.81, and ⅓ of $25.64, the present value of the use for the 4th year, or $8.55, thus making his share $29.36. The youngest child, being 14 years of age at her mother's death, would have this $29.36 and ½ of the present values for the 5th, 6th, and 7th years. This would make her share $64.94. And the widower would have the balance of $218.43. This computation should be adopted unless it is found that the widower has some other expectancy of life or that the annual use of the homestead right has some different value, or that justice requires the use of some other rate of discount.

*Appeal sustained.*

All concurred.