ROCKINGHAM, JUNE, 1888.

---

EATON & *a. v.* EATON.

A specific performance that would be inequitable is not generally enforced.

BILL IN EQUITY, for the specific performance of the following contract :

"Receipt for distributive share in my wife's estate :
                                          "Epping, N. H., Sept. 19, 1883.
"Received of my wife, Sarah Eaton, five hundred and fifty dollars in full for a certain note given by her by date, April 6, 1883, for $800.00, and in full for all claim I may have vs. her estate, to any of the pension money she now has, and it is understood that this receipt is given in full settlement of any claim as an heir to her, my said wife, to any money she may have in case of her decease prior to mine.   I am to move the now partly built new house and add to the house as may be required.

"Signed, sealed and delivered in presence of Fred S. Hatch.
                              Joseph Eaton "    [Seal]

On the back of the paper is the following:

" It is understood that I shall have no part of the $24 due me from government, each 3 months, but she is to have it for her own use, and I am to support myself and not call upon my wife Sarah Eaton for my support, and she shall not be liable for my support.

" Sept. 19, 1883.                                   Joseph Eaton."

The plaintiffs are the children of Sarah Eaton, deceased, and Joseph Eaton, the defendant. Joseph and Sarah having lost a son in the late war, application was made for a pension in pursuance of their agreement that Joseph should look up the necessary evidence, and that the pension should be obtained in the name of Sarah, but should be equally divided between them. The pension was obtained in the manner agreed, and in April, 1883, she received a check for arrearages of $1,741.61. Of that sum $1,600 was deposited in her name, as her money, in a savings-bank, and she gave her note to Joseph for $800, one half of it. The remainder was used to the satisfaction of both. In the summer of 1883, Joseph became fearful that the note was not valid, and employed an attorney to negotiate with his wife for payment. The result was the foregoing agreement under seal, on which Joseph received $550 when he signed it. Before the date of the agreement the parties had drawn and used, for purposes satisfactory to both, $170.

*Marston & Eastman,* for the plaintiffs. The agreement between the defendant and his wife was a valid contract respecting her separate property. Gen. Laws, c. 183, s. 12; *Clough* v. *Russell,* 55 N. H. 279; *Messer* v. *Smyth,* 58 N. H. 298; *Claremont Bank* v. *Clark,* 46 N. H. 135; *Albin* v. *Lord,* 39 N. H. 196; *Houston* v. *Clark,* 50 N. H. 479; *Read* v. *Hall,* 57 N. H. 482; *Jordan* v. *Cummings,* 43 N. H. 134; *Bailey* v. *Pearson,* 29 N. H. 77; *Batchelder* v. *Sargent,* 47 N. H. 262, 266. Similar contracts have been sustained. *Woods* v. *Woods* (Me.), Eastern Rep., Aug., 1885, *p.* 607; *Husband* v. *Epling,* 81 Ill. 172. In the light of the foregoing authorities, it is clear that under our law the defendant's claim stands like a claim which he might have had against any person other than his wife. The release is free from fraud, under seal, and upon sufficient consideration in addition to the seal, and bars his interest in the personal estate left by his wife. The agreement is analogous to one by which an heir apparent, during the lifetime of his ancestor, releases his interest in his ancestor's estate. Such agreements have been held good. *Trull* v. *Eastman,* 3 Met. 121; *Fitch* v. *Fitch,* 8 Pick. 480; Co. Lit. 265 *a.; Beckley* v. *Newland,* 2 P. Wms. 182; *Wood* v. *Stone,* 39 N. H. 572. The contract relating to the wife's separate estate stands like an antenuptial agreement respecting existing and prospective property of parties about to marry. In *Hobson* v. *Trevor,* 2 P. Wms. 191, an agreement in marriage articles, to convey to the husband a third part of what should come to the

father of the wife on the death of his father, was held good, and specific performance of the agreement was decreed. As to the remedy sought by the plaintiffs in this case, see Wat. Spec. Perf., ss. 7, 10, 11, 16, 109, and *Sullings* v. *Richmond*, 5 Allen 187.

Certain facts, stated in the bill and proved at the trial, do not appear in the printed case, to wit, that Joseph is financially irresponsible; that the judge of probate has decreed to him one third of the personal estate; and that a temporary injunction issued upon the bill restraining Sarah's administrator from paying over said one third to Joseph. There would probably be no occasion for a specific performance if the court should hold that the release is a bar to the claim for one third of the personal property, but Joseph having nothing upon which a levy could be made to satisfy a judgment for money wrongfully in his possession, and the probate court having made the above named decree, the injunction should be made perpetual. If the facts above stated become material, we ask to have the case so amended as to show them.

The plaintiffs are entitled to a specific performance of the contract, assuming that the release is valid, but that it is not a bar to the claims of Joseph. *Sullings* v. *Richmond*, 5 Allen 187; *Tarbell* v. *Tarbell*, 10 Allen 278; Story Eq., ss. 1370, 1371; *Drury* v. *Drury*, 2 Eden 60; Wat. Spec. Perf., s. 16. Inadequacy of consideration is not in itself an objection to the enforcement of specific performance. To constitute a defence, the inadequacy must be shown to have resulted from fraud, surprise, misrepresentation, or concealment. Story Eq., s. 244; Wat. Spec. Perf., ss. 179–182. In this case none of the elements necessary to constitute such a defence exist. It is true that the whole claim was settled for a less amount than the face of the note, but it does not appear that nothing was allowed except for the note; on the contrary the writing states that something was paid for the release of the personal estate, and that evidence is conclusive. The writing upon the back of the release relates to an entirely distinct matter, and has nothing to do with the original contract.

Courts of probate are of limited and special jurisdiction, and in this case the probate court could not and did not pass upon the validity of the instrument. *Wood* v. *Stone*, 39 N. H. 572; *Mercier* v. *Chace*, 9 Allen 242; *Jochumsen* v. *Bank*, 3 Allen 87; *Eveleth* v. *Crouch*, 15 Mass. 307; *Grinnell* v. *Baxter*, 17 Pick. 383; *Sullings* v. *Richmond*, 5 Allen 187. If the probate court had passed upon the question of validity, the decree would have been void for want of jurisdiction. *Mercier* v. *Chace*, *Jochumsen* v. *Bank*, and *Sullings* v. *Richmond*, *supra*.

*A. O. Fuller*, for the defendant. The plaintiffs have no standing in equity, the remedy in the courts of probate and of common law being ample. The probate court has jurisdiction of all matters pertaining to the settlement and distribution of estates of dece-

dents, and this jurisdiction is apparently exclusive. G. L., c. 189, ss. 2, 7. For any error of law or fact in its decision, remedy is given by appeal. G. L., c. 207, ss. 1, 11. The courts of probate, inferior and supreme, act upon equitable as well as upon legal grounds. *Clarke* v. *Clay*, 31 N. H. 393; *Hatch* v. *Kelly*, 63 N. H. 29; *Ela* v. *Brand*, 63 N. H. 14. Therefore the supposed facts and law here relied on were equally available in the probate court. Even if the probate court's jurisdiction was not exclusive originally, yet when it once acquired actual jurisdiction of the case, that jurisdiction thereby became exclusive. *Claggett* v. *Simes*, 25 N. H. 410; *Holliston* v. *Barkley*, 11 N. H. 501. The plaintiffs appeared in the probate court and set up the receipt. The court heard them, took time for advisement, and decreed against them. That decree is a final and conclusive adjudication of the whole matter. *Comstock* v. *Crawford*, 3 Wall. 405; *Grignon* v. *Astor*, 2 How. 341; *Thompson* v. *Tolmie*, 2 Pet. 163, 169; *Kimball* v. *Fisk*, 39 N. H. 110; *Tebbets* v. *Tilton*, 24 N. H. 120; *Simmons* v. *Goodell*, 63 N. H. 459; *Blanchard* v. *Webster*, 62 N. H. . Equity does not relieve against a decree where the facts might have been availed of in the court that passed the decree. *Lyme* v. *Allen*, 51 N. H. 243; *Gordon* v. *Gordon*, 55 N. H. 399; *Adams* v. *Adams*, 51 N. H. 395.

Assuming that the probate court had not jurisdiction, the remedy at law was ample. The receipt purports to release money only, and if the defendant obtains money to which the plaintiffs are entitled, money damages afford sufficient redress. Bisp. Eq. 44; *Rees* v. *Watertown*, 19 Wall. 121; *Heine* v. *Levee Com'rs*, 19 Wall. 658. Adequacy of legal remedy bars relief in equity. *Perkins* v. *Foye*, 60 N. H. 496; *Burnham* v. *Kempton*, 44 N. H. 95; *Railroad* v. *Railroad*, 57 N. H. 200; *Heath* v. *Bank*, 44 N. H. 177; *Bean* v. *Coleman*, 44 N. H. 547. Again: To get relief in equity, the plaintiffs must show an actual, valuable, and adequate consideration, and that the defendant was treated not only fairly, but in a manner free from all suspicion. *Eastman* v. *Plumer*, 46 N. H. 479; *George* v. *Johnson*, 45 N. H. 456; *Pickering* v. *Pickering*, 38 N. H. 400; *Powers* v. *Hale*, 25 N. H. 145; *Seymour* v. *Delancey*, 6 Johns. Ch. 222; Bisp. Eq., s. 372.

The probate court has decreed against the alleged bargain, and there was no valuable consideration: nothing but part payment of a promissory note. 1 Parsons Cont. 363, and n. (s. s.); *Mathewson* v. *Bank*, 45 N. H. 104; *Jennings* v. *Chase*, 10 Allen 527.

The alleged agreement is not valid. In *Loring* v. *Sumner*, 23 Pick. 98, and *Parish* v. *Stone*, 14 Pick. 198, such an agreement between father and son was held insufficient to uphold a promissory note. A valid promise will support a counterpromise. *Higginson* v. *Gray*, 6 Met. 212; *Ellis* v. *Ridgway*, 1 Allen 501. The seal might at law supply the lack of consideration, but equity requires an actual, valuable consideration. See authorities above

cited. Moreover, the sealed instrument in this case has been varied by parol, and the agreement finally made was not sealed. *Munroe* v. *Perkins*, 9 Pick. 298.

Husband and wife could make no such contract, if others might. This is clearly so at common law. *Patterson* v. *Patterson*, 45 N. H. 166 ; *Burleigh* v. *Coffin*, 22 N. H. 124. The common law disabilities of married women still continue, except in so far as their powers have been enlarged by statute. *Bailey* v. *Pearson*, 29 N. H. 77 ; *Pike* v. *Clark*, 40 N. H. 9 ; *Eaton* v. *George*, 40 N. H. 259 ; *Ames* v. *Foster*, 42 N. H. 381 ; *Shannon* v. *Canney*, 44 N. H. 592 ; *Carleton* v. *Haywood*, 49 N. H. 314 ; *Whipple* v. *Giles*, 55 N. H. 139 ; *Blake* v. *Hall*, 57 N. H. 373 ; *Stokell* v. *Kimball*, 59 N. H. 13 ; *Buss* v. *Woodward*, 60 N. H. 58 ; *Bank* v. *Buzzell*, 60 N. H. 189 ; *Bank* v. *Sanborn*, 60 N. H. 558. Our statutes (G. L., c. 183, s. 12, and Sts. 1879, c. 57, s. 27) have given married women full power to contract, with only two limitations that are here material, namely, (1) that "no married woman shall be bound by any contract or conveyance as surety or guarantor for her husband, nor by any undertaking for him or in his behalf;" and (2) that the authority thus given her to contract "shall not affect the laws heretofore in force as to contracts between husband and wife." This last appears in Sts. 1876, c. 32, s. 1, which first conferred general power to contract. The law as to such contracts remains as it was at the passage of that statute. Sts. 1846, c. 327, left married women powerless to contract except in relation to property held to their separate use. *Bailey* v. *Pearson*, 29 N. H. 77 ; *Ames* v. *Foster*, 42 N. H. 381 ; *Shannon* v. *Canney*, 44 N. H. 592. The same was true under Sts. 1860, c. 2342, and Gen. Sts., c. 164, s. 13. *Carleton* v. *Haywood*, 49 N. H. 314 ; *Whipple* v. *Giles*, 55 N. H. 139 ; *Blake* v. *Hall*, 57 N. H. 373, 378 ; *Bank* v. *Sanborn*, 60 N. H. 558. Thus stood the law until the statute of 1876 was passed. Unless a wife had more powers to contract with her husband than with others, she had not then and has not now any capacity to contract with him unless " in respect to property held in her own right." Such was not the contract set up in this case. It related not to property held by Mrs. Eaton in her own right, but to property that might be so held by her at the time of her death. It therefore exceeded the power of a married woman to make it. *Muzzey* v. *Reardon*, 57 N. H. 380 ; *Shannon* v. *Canney*, 44 N. H. 592 ; *Ames* v. *Foster*, 42 N. H. 381. Nor could she make a valid express contract with her husband, even relative to property held in her own right. On this point the dicta are numerous and conflicting, but there is no direct decision.

There is no ground of reason or justice in the plaintiffs' claim. All the pension money rightfully belonged to the husband ; but before it was obtained, he and his wife, neither knowing nor caring what their legal rights in the matter might be, agreed that if either of them obtained a pension, they would divide it equally.

To carry out this agreement the note was given. Later, the wife refused to keep her agreement, but extorted from her husband the agreement here sought to be enforced as the only condition on which she would even partially perform her agreement.

DOE, C. J.   The defendant and his wife agreed that a certain sum of money was their property in equal shares, and no view of the case is suggested more favorable to the plaintiffs than that which regards half of the fund as his.   His wife, having the whole fund in her name and possession, gave him her note for half of it. The note was for more than $550, and he was entitled to more than $550.   In this state of things she paid him $550, and he gave her a receipt for that sum in full payment of the note, and in full for all claim he might have against her estate for any part of the fund, and in full settlement of any claim he might have "as an heir" to a distributive share of her money if he survived her.   He has survived her; and their children ask a decree for a specific performance of his release of his claim as distributee.   There was no consideration for his relinquishment of his right of inheritance. Specific performance is inequitable ; and the facts show no ground for an exception to the rule that inequitable performance is not specifically enforced.   1 Pom. Eq. Jur., *s.* 400; Story Eq. Jur., *ss.* 742, 750, 769; *Powers* v. *Hale*, 25 N. H. 145, 152; *Pickering* v. *Pickering*, 38 N. H. 400, 407, 408, 409 ; *Eastman* v. *Plumer*, 46 N. H. 464, 478, 479.   "In general, it may be said that the specific relief will be granted when it is apparent, from a view of the circumstances of the particular case, that it will subserve the ends of justice ; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties.   It is not sufficient . . . . to call forth the equitable interposition of the court that the legal obligation under the contract to do the specific thing desired may be perfect.   It must also appear that the specific enforcement will work no hardship or injustice ; for if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate that result."   *Willard* v. *Tayloe*, 8 Wall. 557, 567.   The validity of the defendant's release of his right to a distributive share of his wife's estate is a question that need not be considered.

*Bill dismissed.*

BINGHAM, J., did not sit: the others concurred.