Merrimack,
April 7, 1925.

### WILLIAM L. KANN *v.* WAUSAU ABRASIVES COMPANY.

Failure of the plaintiff to perform his part of a contract in strict accordance with its terms is not a bar to his bill for specific performance when the failure in question relates to a matter which is not of the essence of the contract, or when his failure is due to delay on the part of the defendant in performing his obligations under the contract.

An option for the purchase of goods additional to those specifically contracted for, constituting part of the initial agreement, requires no independent consideration.

The fact that the amount of goods to be delivered under the option, and the price to be paid for them, are at present undetermined, does not make the option so indefinite that it cannot be enforced, when by its terms there is provided a measure by which both amount and price may be made certain at the time when deliveries are to be made under the option.

Specific performance may be decreed of a contract for the sale of chattels having such a unique and peculiar value that a breach of the contract would constitute irreparable injury to the plaintiff.

The defendant having agreed to sell to the plaintiff the entire product of its mine above its requirements for its own business, and to ascertain and inform the plaintiff as to the capacity of the mine and its own requirements, the plaintiff, on a bill in equity seeking in the alternative specific performance of the contract or damages for its breach, is entitled to a discovery of the promised information, on such terms as the trial court may find just, to aid him in determining which remedy he will elect and in preparing his case upon the question of damages.

BILL IN EQUITY, for specific performance of certain provisions of a contract for the purchase and sale of crystalline garnet. Transferred upon the defendant's demurrer by *Branch*, C. J., without a ruling.

*Martin Paskus* (of New York) and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Paskus* and *Mr. Demond* orally), for the plaintiff.

*George T. Hughes* (by brief and orally), for the defendant.

MARBLE, J.   A demurrer in equitable proceedings does not differ essentially from a demurrer in an action at law.   It "admits the truth of the facts stated in the bill, so far as they are relevant and are well pleaded" (*Craft* v. *Thompson,* 51 N. H. 536, 540), but insists that, upon the facts so stated, the plaintiff is not entitled to equitable relief.

The material allegations of the bill in the present case are as follows:

The defendant is a Wisconsin corporation engaged in the manufacture of abrasive papers, cloths, and grinding discs, and in connection with its business it owns and operates a garnet mine at Danbury, N. H.   Garnet in crystalline form is not readily obtainable, and the deposits owned by the defendant at Danbury constitute the only available supply of this mineral thus far developed for commercial use in the United States.

The plaintiff, who had been engaged for some years in the sale of abrasives, contracted with the defendant for the purchase of one thousand tons of concentrated garnet to be taken from the Danbury mine.   The garnet so purchased was to be used for grinding and smoothing glass, the utility of garnet for that purpose having been discovered by the plaintiff.   Five hundred tons were to be delivered f. o. b. Pittsburgh, Pa., before January 1, 1923, and the remaining five hundred tons between that date and the following April, in approximate monthly instalments to be more definitely fixed after delivery of the first hundred tons, payment to be made sixty days after shipment at the rate of $45 per ton.   Each agreed not to compete with the other.

At the time the contract was executed it was understood that the plaintiff was to have an option for five years from April 1, 1923, on the output of the mine in excess of the defendant's own requirements in the paper and cloth trade, and the defendant agreed to furnish the plaintiff six months prior to April 1 written information as to the amount of ore available on the property and its reasonable mill capacity for deliveries beyond the initial one thousand tons, coredrilling the property if necessary for that purpose.   The option itself was inadvertently omitted from the original contract but was later made a part thereof by correspondence.

The installation of new equipment by the defendant served to retard deliveries, and at the end of 1922 there were still unshipped 271 of the first 500 tons.   This the defendant stored for the plaintiff, billing 150 tons to him as of December 30, and agreeing to carry over the balance for future billing.   The plaintiff offered payment, but the

defendant wrote him that it was "not necessary to have remittance but simply to get this on the books" to show in the year's business; that it was therefore billed to him in the regular way and could be shipped as he requisitioned it.

Meanwhile the plaintiff was attempting to obtain the stipulated information regarding the defendant's requirements and the amount of available ore; and his reason for not ordering regular shipments was because the defendant was withholding this information. By letter of February 9 the defendant for the first time professed disappointment at the plaintiff's failure to pay for the billing of December 30, and announced its intention of seeking another market if the terms of the contract were not more strictly observed. The plaintiff replied February 19 expressing his understanding that the sixty-day credit ran only from the date of actual shipment, but offering nevertheless to pay for the billing by March 1. In this letter he again requested information as to the defendant's requirements and the capacity of the mine. The defendant made no reply until March 6, when it notified the plaintiff that all his rights under the contract and option were forfeited by his failure to pay for the billing of December 30 and to give shipping instructions for the ensuing months. March 9 the plaintiff forwarded a certified check for the billing of December 30, and notified the defendant that he was prepared to pay for the entire balance upon receipt of the information asked for. At the same time, he elected to exercise the five-year option. The defendant returned the check March 12, and again repudiated the contract, whereupon the plaintiff by telegram directed shipment of all undelivered garnet due to April 1, offered to pay therefor in accordance with the terms of the contract, and refused to recognize the defendant's right of cancellation.

The bill expressly avers that when the defendant attempted to cancel the contract the plaintiff had not broken it in any particular so as to entitle the defendant to rescind; that the plaintiff's delay in ordering shipments was due solely to the defendant's failure to furnish the information called for by the contract; that the provision relating to monthly deliveries was waived; and that even if there was a technical breach on the plaintiff's part it was not a material one. The bill also avers that the defendant's failure to furnish the required information and its attempted rescission were steps in a deliberate plan to repudiate the contract in order to obtain for itself the benefits of the plaintiff's glass trade by selling its product directly to his customers instead of to himself.

On the facts thus alleged, the plaintiff claims the right to elect whether to apply for specific performance for the future with pecuniary compensation for the past breach, or to waive specific performance, seek a supply of garnet elsewhere, and claim damages for the entire breach. But he avers that he cannot intelligently make such election without the promised information, and that because of the lack of any other developed source of supply and the uncertain expense of developing a new source, his damages cannot be properly determined by a jury. The prayer is for specific performance of the agreement to furnish information as to the capacity of the mine and the defendant's own requirements, for an injunction against a violation of the defendant's agreement not to sell its product to the plaintiff's trade, for an assessment of the plaintiff's damages, and for general relief.

The defendant claims that the demurrer should be sustained (1) because on the facts alleged the plaintiff himself has broken the contract, (2) because the so-called option lacks consideration, mutuality, and definiteness, and (3) because the plaintiff has an adequate remedy at law.

1. Although the contract was made in Pennsylvania and is doubtless governed by the laws of that state (*Cunningham* v. *Ferguson,* *ante,* 380; *Kimball* v. *Express Co.,* 76 N. H. 81, 82; *MacDonald* v. *Railway,* 71 N. H. 448, 450), this circumstance is not important, since the uniform sales act of Pennsylvania in its provisions relating to delivery in instalments practically adopts the general rule governing bilateral contracts. This rule, so far as applicable to the present situation, may be thus stated: Unless the buyer commits a material breach, the seller is not excused from the obligation to perform further; and if the seller knowingly accepts defective performance, or accepts further performance after he is aware that a breach has been committed, such conduct "will operate as a waiver of his right to refuse to go on with the contract." 2 Williston, Sales, s. 467.

According to the facts alleged, there is ample evidence to sustain a finding of waiver on the defendant's part. The defendant was itself responsible for the first delay in shipment. The option was an important part of the contract and so treated by the plaintiff, yet the defendant continued to ignore the plaintiff's repeated requests for the data it had expressly agreed to furnish. It was at the defendant's suggestion that the unshipped garnet was stored. At the time of the billing of December 30, the defendant explicitly stated that it was "not necessary to have remittance," and that the garnet

then in storage could be shipped as the plaintiff called for it. The plaintiff's letter expressing his understanding of the contract and offering to pay in case the defendant did not share his understanding was ignored by the defendant until the sixty-day period had elapsed, when the defendant peremptorily declared the contract to be at an end, and rejected the payment which immediately followed.

The contract itself provided merely for approximate monthly shipments, and so far as the deliveries in 1922 were concerned, their quantity was to be more definitely fixed after the delivery of the first hundred tons. This would clearly indicate that the provisions with respect to shipments were not of the essence of the contract. That being the case, strict compliance with those provisions would not be a prerequisite to the granting of equitable relief. *Pierce* v. *Morse*, 65 N. H. 196, 198.

Furthermore the plaintiff expressly avers on information and belief that the defendant's conduct was part of "a deliberate plan to breach and repudiate its contract on some pretext, to the end that the defendant might obtain for itself the benefits of the trade in abrasives which the plaintiff had created." While the defendant by demurrer does not admit the truth of this charge (*Rice* v. *Company*, 56 N. H. 114, 126), yet the specific facts alleged in the bill are sufficient to justify the allegation.

2. The defendant contends that the provision in regard to the excess product of the mine is not an option in the strict sense of the term, but merely an offer to give the plaintiff an opportunity to purchase this product in case the defendant should decide to sell. While it is true that the expression "first option" is used by the defendant in his letter supplementing the original contract, it is evident that this expression, when read with the other provisions of the contract, has a meaning quite distinct from that of similar words construed by the court in *Gosselin* v. *Thurston, ante,* 65, and *Hill* v. *Prior,* 79 N. H. 188.

In the original contract the defendant agrees to notify the plaintiff as soon as possible of the amount of ore available, and promises to core-drill the property, if necessary, in order to ascertain how much tonnage can safely be blocked out in the mine, from which, to quote the words of the contract, "we intend to produce the garnet for future deliveries to you, in addition to this contract for one thousand tons of garnet which we are selling you." It is an express condition of the original order of one thousand tons that this notice shall be given, and the price of the future deliveries is fixed. The contract as

first stated in the defendant's letter of March 16 had no reference to time, but the defendant's letter of May 6 supplies this deficiency. The simple fact that the defendant happens in that letter to refer to this particular provision of the agreement as a "first option for five years" does not abrogate the definite, unequivocal promise contained in the original contract.

The plaintiff's election to accept the option, in spite of the defendant's failure to furnish the promised information, would "ripen the option into a contract of purchase" (*New England Box Co.* v. *Prentiss*, 75 N. H. 246, 247) binding upon both parties alike, unless, as the defendant contends, the option is without consideration or is too indefinite for enforcement.

It is not necessary that the option be supported by independent consideration. The option was one of the terms of the initial agreement, and the consideration for that agreement, being ample, will support the subsidiary promise. 13 C. J. 362; *Hutt* v. *Hickey*, 67 N. H. 411, 417.

The provision that the plaintiff may have an "opportunity of arranging for future deliveries" or taking "other sources of supply" has reference to his right to accept or reject the option: it is of no avail now that the option has been exercised.

As to the other provisions, the maxim, "That is certain which may be rendered certain," is peculiarly appropriate. *Willis* v. *Cutler*, 61 N. H. 405, 410.

The tonnage contracted for is capable of exact determination — one thousand tons in the first instance, and after the acceptance of the option, the excess over and above the amount needed for the defendant's business as established when the contract was made, the capacity of the mine as reasonably operated being the standard.

The price also is certain, the rule being that "either in an executory contract to sell or in a sale, the parties may provide for some means of determining the price later by outside circumstances." 1 Williston, Sales, s. 167. The varying element, or outside circumstance, in the present instance is the increased cost of production due to advances in labor, material, and supplies. The price is to be fixed annually during the five-year period, but the basal figure remains at $45 per ton. This being so, the price is "capable of judicial ascertainment" (*Solter* v. *Leedom & Worrell Co.*, 252 Fed. 133, 134), and is therefore sufficiently exact.

The option being in effect a continuation of the original contract,

the provisions relating to credits and deliveries are the same. These provisions are definite.

Moreover, with respect to the specific enforcement of contracts, it has been suggested that the difficulty regarding uncertainty has probably been overemphasized, and that "it should not be allowed to hamper equitable relief further than necessity requires." 3 Williston, Con., s. 1424. Reasonable certainty is all that is demanded, and that requirement is fulfilled if the meaning of the contract, taken as a whole, is intelligible to the court. *Work* v. *Welsh*, 160 Ill. 468, 473.

3. The relief which the plaintiff asks for in the first instance is analogous to discovery by an inspection of the mine. *Reynolds* v. *Company*, 71 N. H. 332, 338. Discovery is sought to enable the plaintiff not only to elect his remedy but to determine his damages in case he elects pecuniary compensation instead of specific performance. In such a situation the trial court will do what justice requires. *LaCoss* v. *Lebanon*, 78 N. H. 413, 417. Details of performance and supervision can be provided for in the decree. If discovery of the capacity of the mine proves unreasonably burdensome to the defendant, justice may require that the work be performed by the plaintiff himself at the defendant's expense. All such questions properly arise at the trial, and can be disposed of there by the exercise of sound judicial discretion.

It is true that equity does not ordinarily enforce specific performance of a contract respecting personal property, but this is not because the subject-matter is personalty, but because the remedy at law is adequate. *Eckstein* v. *Downing*, 64 N. H. 248. Where land is the subject-matter of the contract the damage is held to be irreparable as a matter of law. *Dow* v. *Railroad*, 67 N. H. 1, 65; *Pierce* v. *Morse*, *supra*. And where chattels (6 Pom. Eq. Jur., s. 748) or personal services have a unique and peculiar value, a contract relating thereto comprises the same element of irreparable damage as in the case of contracts for the purchase and sale of real estate.

Such contracts are affirmatively enforced unless they contemplate a course of action demanding individual taste, skill, or judgment, which it is obviously impossible to coerce, or unless the result of direct enforcement will be to interfere unreasonably with the defendant's privacy or personal liberty. 33 Harv. Law Rev. 420, 439. And even where these obstacles are encountered, it is often possible to enforce the contract indirectly by enjoining the breach of an express or implied stipulation not to do acts inconsistent with the rendering of the particular service contracted for. 4 Pom. Eq. Jur., s. 1341.

The doctrine of indirect enforcement of contracts by a decree enjoining acts in breach thereof is recognized in this state. *Blanchard Company* v. *Company*, 80 N. H. 161, 167; *Stratton* v. *Stratton*, 58 N. H. 473.

The bill in the present case contains an averment that the deposits of garnet owned by the defendant at Danbury. "constitute the only available supply of said mineral thus far developed for commercial use in the United States." This is in effect an averment that the subject-matter is of peculiar value and that the defendant has a practical monopoly. 36 Cyc. 559. The damages occasioned by a breach of contract for the purchase and sale of such a commodity might be found to be irreparable. *American Smelting &c. Co.* v. *Company*, 248 Fed. 172, 182. Consequently it cannot be said as a matter of law that the plaintiff is not entitled to all the remedies incident to this class of contracts.

Affirmative relief may be denied if to grant it would mean an unwarranted invasion of individual rights, or necessitate an impracticable amount of judicial supervision. *Marble Co.* v. *Ripley*, 10 Wall. 339, 358, 359. But the precise remedy eventually awarded, whether specific performance or an injunction against a breach of the defendant's negative promise, must of necessity depend upon an equitable consideration of all the evidentiary facts and circumstances. *Norris* v. *Clark*, 72 N. H. 442; *Boston &c. Railroad* v. *Railroads*, 65 N. H. 393, 401; *Pierce* v. *Morse, supra*, 198.

The order is

*Demurrer overruled.*

All concurred.