MANCHESTER DAIRY SYSTEM, INC., *v.* HENRY M. HAYWARD.

Jurisdiction of the subject matter of a controversy cannot be conferred upon a court by agreement of the parties.

Contracts concerning personal property or services having a unique and peculiar value may be enforced in equity.

A contract by a member of a coöperative marketing association to sell all of his products through the association will not be specifically enforced when the difficulties of enforcement would be so great as to render it a practical impossibility. The same objections apply to relief by mandatory injunction.

An injunction against disposal of his products otherwise than through the association should be granted if irreparable injury would result from the breach of the contract.

A contract provision for liquidated damages is not exclusive of equitable relief, unless it appears that it was intended by the contract to give an election between performance and payment of damages. Express provision in the contract for its enforcement in equity is evidence that no such right of election was intended. •

Coöperative marketing agreements by which members agree to market all their

products through a common agency are not void as being against public policy.

Undue hardship to the defendant in being obliged to undergo punishment for contempt if he shall disobey the injunction of the court is no ground for refusing to issue the injunction. The hardship which will justify refusal to grant equitable relief is the hardship attendant upon obedience to the decree and not that resulting from disobedience.

BILL IN EQUITY, for the specific performance of a contract for co-operative marketing of dairy products, and for negative relief by injunction. Transferred by *Doe*, J., upon exceptions of both parties.

Material portions of the contract follow: —

"The Manchester Dairy System, Inc., a corporation . . . organized for the purpose of minimizing speculation and waste in marketing dairy products, hereinafter called the Association,~ and the undersigned, a holder of common stock in the said Association, hereinafter called the Member, agree in consideration of the mutual promises and covenants as follows:

"To Wit:

"1. The Association agrees to buy and the Member agrees to sell and deliver to the Association all the dairy products produced on farms owned or controlled by the Member for the period of three years from the date when this agreement shall become effective. . . .

"4. The Association agrees to resell such dairy products together with dairy products of other Members delivered to the Association under similar contracts at the best prices obtainable by it under market conditions.

"5. Each member shall be paid monthly for dairy products delivered to the Association such base price as the Board of Directors shall determine. After the payment of costs of handling and operation, payment of dividends on the capital stock at a rate not exceeding six per cent per annum and the setting aside of a reserve fund not exceeding 10% of the net earnings, the balance shall be distributed ratably among the Members according to the quantity and quality of the dairy products furnished by the Members to the Association. Such payment shall be made at the end of each year. . . .

"7. This agreement is one of the series identical in terms comprising with all such agreements signed by individual members or otherwise one single contract between the Association and the Members mutually and individually obligated under all the terms thereof. The Member, therefore, covenants and agrees that as the remedy at law for breach hereof would be inadequate and inasmuch as it is

now and ever will be impracticable and extremely difficult to ascertain and determine the actual damage resulting to the Association should the Member fail to sell and deliver his dairy and other agricultural products to the Association in accordance with the terms hereof, the Member agrees to pay the Association for all milk or other dairy products delivered, consigned, marketed or withheld by or for him other than in accordance with the terms hereof the sum of $5.00 per cow as liquidated damages for breach of this contract. The Member further agrees that in the event of a breach or threatened breach by him of any provision relating to the delivery of milk or other dairy products, the Association shall be entitled to an injunction to prevent breach or threatened breach thereof, or to a decree for specific performance hereof, and the parties hereto agree that this is a contract for the purchase and sale of personal property under special circumstances and conditions and that the Association cannot go to open markets and buy milk or other dairy products to replace any which the Member may fail to deliver. . . .

"14. It is expressly understood and agreed that this contract is one of a series substantially identical in terms. All such contracts shall be considered one contract for the purpose of binding the subscribers to the same extent as if all the subscribers had signed one contract.

"15. This contract shall not become operative until in the opinion of the board of directors at least 75% of the nearby milk supply, so-called, has been contracted for."

The prayer of the plaintiff's bill included: "2. That the defendant be permanently enjoined from marketing, consigning or withholding the milk or other dairy products produced on farms owned or controlled by the defendant in any other manner than in accordance with the terms of said contract, or

"3. That defendant be ordered to deliver the milk or other dairy products produced on farms owned or controlled by the defendant to the complainant for the period of the contract in accordance with the terms of said contract."

The defendant's answer included a prayer for reformation of the contract.

Upon hearing had, the material findings and rulings incorporated in the decree were:

"2. No false, fraudulent, or mistaken representations were made to Hayward by the agents of the System in negotiating the contract. Hayward's petition for reformation of the contract is denied.

"3. The agreement for liquidated damages is not an option for the termination of the contract whenever Hayward may choose. Such damages are for a breach of its obligations. His offer to pay the amount of such damages is not an offer to perform the contract; neither does it discharge his obligations under it. The contract is a legal obligation binding both Hayward and the System at the present time.

"4. Hayward has never delivered milk in accordance with his obligation. As he has produced milk from twelve cows since the System became entitled to the milk produced by him, he owes the System $60.00 under the contract provision for liquidated damages of $5.00 per cow. . . .

"5. During April, May and June of this year the monthly base price, paid by the System for milk, netted its producers less than other producers in the same neighborhoods received from other dealers. And it is probable that this difference will not be wholly made up by the distribution provided for by the contract, of so-called net earnings at the end of the year. However disappointing this may be to the promoters of the System and its producing members, it neither excuses nor justifies Hayward's failure to perform his obligation. Being a stockholder and producing member of this co-operative organization, it is Hayward's right to give, and it is the System's privilege to receive, any recommendations that his interest in its success and his experience in the milk business might suggest. If the unsatisfactory monthly returns to the producers during the first three months of operation were due to some mistake or mistakes in management, an investigation by Hayward of the System's methods and his coöperation with its directors and officials in devising improvements might, and probably would, result in a correction of the mismanagement and a corresponding improvement in the monthly milk checks. Other producers have given much time to the establishment and operation of this undertaking and it would be desirable, reasonable, and no doubt profitable to the System should Hayward do the same. He may be so occupied as to render this impossible. But a breach of this obligation to deliver milk is not a lawful remedy by which he may evade monthly base prices which are declared in accordance with his contract.

"6. The System has petitioned for the 'specific performance' of Hayward's contract. Hayward is a man of honor. Painstaking fulfillment of contracts is his habit. There is reason to believe that no court order will be needed to assure a performance of his legal

duty in this case. It is not to be expected that a man of his standing will refuse to deliver milk to the System when he learns, from this decree, that his contract is an existing legal obligation. The honorable discharge of such obligation by performance will alone satisfy him. If Hayward should be unmindful of his contractual obligations, and should persist henceforth in their breach, 'specific performance' could be accomplished only by placing his milk-producing operations in charge of officers of the court. Such process would be cumbersome, expensive, and without promise of profitable results. There is evidence of no exigency to justify such an undertaking. It is not a remedy that can reasonably be granted in this case. The same is true of the prayer for an injunction. Hayward's persistence in his breach of duty, were an injunction issued, would result in punishment by fine or imprisonment for him. These punishments would be neither merited by, nor a reasonable remedy for, a breach of his duty to deliver to this plaintiff the milk of his twelve cows if he continues to produce milk from them. Specific performance and injunction are denied.

"7. By his contract Hayward agreed to reimburse the System for 'all costs of court, costs for bonding and otherwise, expenses arising out of or caused by litigation including any reasonable attorney's fee expended or incurred by the Association in' any action whatsoever brought by the System by reason of his breach of the Contract. The System has reasonably incurred, to the present time, expenses of this nature amounting to five hundred dollars, and Hayward owes the System therefor.

"8. . . . Hayward is ordered to pay the System: —

| | |
|---|---|
| Liquidated damages | $60.00 |
| Expenses | 500.00 |
| Total | $560.00" |

The following facts are added by agreement of the parties: 1. The evidence at the hearing showed there was plenty of milk to be had in the open market in the territory covered by said Association. 2. Since the filing of the above decree the defendant Hayward has persisted in his refusal to furnish milk produced on his farm to the plaintiff and has continued to furnish said milk to other persons who are competitors of the plaintiff. 3. Since the System notified Hayward of its readiness to receive his milk he has at all times expressed his readiness to pay $5.00 per cow to the System provided it would release him from further claim under the contract.

Before hearing, the defendant excepted to the denial of his motion to dismiss the plaintiff's bill on the ground that the plaintiff had an adequate remedy at law under the provisions of his contract. After the hearing the plaintiff excepted to the refusal to grant its prayer, numbered 2, for injunctive relief; and the defendant excepted generally to all rulings and to the interpretation placed upon the contract, particularly clause 7, and to the order that he pay expenses of five hundred dollars.

Other facts appear in the opinion.

*Reuben Hall* (of Massachusetts) and *Sullivan & White* (*Mr. Hall* orally), for the plaintiff.

*Irving E. Forbes* and *Doyle & Doyle* (*Mr. Forbes* orally), for the defendant.

SNOW, J.   1. The defendant's motion to dismiss challenges the power of the court to grant equitable relief. Jurisdiction over the subject matter of a controversy cannot be created or conferred by the agreement of the parties. *Robinson* v. *Potter*, 43 N. H. 185, 191; *Batchelder* v. *Currier*, 45 N. H. 460, 464; *Burgess* v. *Burgess*, 71 N. H. 293; *Mansfield* v. *Holton*, 74 N. H. 417, 421; *Baker* v. *Varney*, 129 Cal. 564, 565, 566; *Board &c.* v. *Company*, 68 N. J. Eq. 500; *Minnesota* v. *Northern Securities Co.*, 194 U. S. 48, 62; Page on Contracts, s. 724. Therefore authority, if any here, is to be found, not in the express stipulations for equitable relief, but in the general principles limiting equitable jurisdiction. The equity powers of our courts include the specific performance of contracts, and cases where there is not a plain, adequate and complete remedy at law. P. L., c. 317, s. 1. These powers, as a part of the general equity jurisdiction of our court, antedate legislative sanction. *Wells* v. *Pierce*, 27 N. H. 503, 512; *Walker* v. *Cheever*, 35 N. H. 339, 349; *Copp* v. *Henniker*, 55 N. H. 179, 210.

It is true that equity does not ordinarily enforce specific performance of a contract respecting personal property; but this is not because the subject matter is personalty, but because the remedy at law is adequate. Where chattels or personal services have a unique and peculiar value, contracts relating thereto, comprising the same element of irreparable damages as exists where land is the subject matter of the contract, like contracts as to realty, may be specifically enforced. *Kann* v. *Company*, 81 N. H. 535; *Eckstein* v. *Downing*, 64 N. H. 248, 256, 257, 259; *Jones* v. *Newhall*, 115 Mass. 244,

248, 249; *Telegraphone Corp.* v. *Company*, 103 Me. 444; *Corbin* v. *Tracy*, 34 Conn. 325, 328; Williston, Contracts, s. 1419. The jurisdictional question here presented, therefore, depends upon the answer to the question whether or not the plaintiff has an adequate remedy at law. This requires an examination of the entire contract, its character and purpose, and the result to the plaintiff of an unrestrained breach by defendant.

The contract is one of a series of contracts, all identical in terms, which together constitute a single agreement by which all member subscribers became obligated mutually and individually to the association and to each other to the same extent as if all had signed one contract. Each bound himself to sell and deliver to the association all the dairy products which he should produce during the period of his membership; while the association, in turn, bound itself to resell the same, together with the products of the other members, at the best market price obtainable. It was a condition of the multi-party compact that the association could not, by purchase in the open market, replace milk which any member might fail to deliver. The entire proceeds of the resale, less the costs of handling and operation and a moderate contribution to a reserve fund, were to be distributed ratably to, or for the benefit of, members according to the provisions of the contract. The members promised coöperative action during the several months of the year in order that an adequate supply for consumers at all seasons of the year might be assured. The contract did not become operative until at least 75 per cent of the nearby milk supply had been contracted for. In other words, the plaintiff is a coöperative marketing association, composed exclusively of producers of dairy products, operating solely for their benefit and without profit to itself. Its declared purpose was to minimize speculation and waste in disposing of the products of its members.

It is found as a fact that much time had been given by some of the members to the establishment and operation of the enterprise. Manifestly, in order to do business, such an association must maintain an organization for receiving, handling and marketing the products. It must employ officials and servants. Expenses must be incurred. Capital, and therefore credit, must be secured for the conduct of its business and the discharge of its current obligations. Contracts must be made for the transportation and disposal of the products of its members. In order to make advantageous contracts the officers of the association must be able, in advance and with rea-

sonable certainty; to make estimates of the volume of its business, and must have assurance of the supply of the products contracted for. While the contract bound the defendant only to sell and deliver such products as he produced, and contained no stipulation that he should continue in the dairy business, it appears that at the time of the contract all members were producers. It cannot be presumed that the probability of changes in the vocation of members would introduce any considerable element of uncertainty. The fact that milk was obtainable in the open market is immaterial since by the terms of the contracts with its members the association could not purchase. As shortages could not be supplied from non-members the fulfilment of member contracts was essential to the fulfilment of the contracts of the association. It must be assumed that the work of organization and preparation had been performed, and that obligations of the character indicated had been incurred, on the faith and expectation of receiving the products of the members in compliance with their contracts.

Judgment for the loss of the profits which would have accrued to the association solely from the resale of the products withheld by a breaching member would not necessarily measure the damages to the association. If one member may breach his contract with impunity so might others. With each withdrawal a larger proportionate share of the expenses would fall upon the remaining members. It would be impossible to compute the losses which would thus progressively accrue to the association and its remaining members. Nor would this diminution of the proportionate returns, if they could be computed, measure the full extent of the wrong to the association. The influence of the conduct of the breaching member would inevitably tend to promote further withdrawals and impair the ability of the association to secure new members. If indulged in by a sufficient number it would impair the effective existence of the association if, in fact, it did not bring about a dissolution. It is plain that an unrestrained breach of member contracts would produce irreparable injury to the association, and, through it, to each of the remaining members.

"The society could not obtain proper and adequate relief in an action at law for damages, or, indeed, in any other way than by restraining defendant from disposing of the property that he had pledged to it. . . . The injury to the society could not be measured in dollars and cents. Organized for the mutual protection and advantage of each of its members, receiving no gain and making no

profit from the transaction, it would be wholly impracticable to esti-
mate what damage it would sustain if the members could dispose of
their crops.  The life and usefulness of the society depends entirely
upon the fidelity of the members in observing the agreement, and
their failure to comply with it would necessarily work a dissolution
of the society and consequently have the effect of depriving the
members of the benefit and advantages they might expect to derive
from its existence." *Owen County Burley Tobacco Society* v. *Brum-
back*, 128 Ky. 137 (1908).  "Wheat is the only commodity the asso-
ciation can use as a going concern.  All it can do with money is to
pay the expenses and disperse the balance among its members.  It
necessarily follows that there is no adequate remedy at law.  The
only remedy is injunction, preventing the member from selling to
others, and thus forcing the delivery of the wheat to the association."
*Kansas Wheat Growers' Ass'n* v. *Schulte*, 113 Kan. 672 (1923).  "A
recovery of damages for a breach of the contract entered into between
the plaintiff and defendant in this case would so completely fail to
furnish relief, in case there was a breach of contract to deliver produce,
that the whole object for which the association was formed would be
defeated.  Compensation in damages could not be made, because
the injury is of such nature that the computation is impossible.
The plan upon which the association is conducted makes its success
depend, not upon the making of money for the association, but
upon having such influence on the market price of the articles which
the defendant and other cane growers produced as would be benefi-
cial to the producers within the association and enable each and
every one of them to obtain a fair market price." *Harrell* v. *Cane
Growers' Co-op. Ass'n*, 160 Ga. 30, 50 (1925), *Oregon Growers' Co-op.
Ass'n* v. *Lentz*, 107 Or. 561, 579, 580 (1923); *Dark Tobacco Growers'
Ass'n* v. *Dunn*, 150 Tenn. 614 (1925).

As in these cases, so in the instant case, the injury to the plaintiff
is of a character which would seriously tend to defeat the very pur-
pose of its organization.  It could not be measured in dollars and
cents.  It follows that the plaintiff's remedy by an action at law is
inadequate, and the case falls within the field of equitable jurisdiction.

So far we have discussed the question of jurisdiction without re-
gard to the agreement for damages.  Does the stipulation of the de-
fendant to pay five dollars per cow as liquidated damages in case of
his failure to comply with the terms of his contract afford the plaintiff
an adequate remedy at law, and thus deprive the court of equitable
jurisdiction by removng the ground upon which it rests?  It is clear,

for the reasons already expressed, that this sum does not necessarily measure the wrong to the plaintiff of the defendant's breach of his contract. It must be conceded, however, that it was in the power of the plaintiff by agreement to release the defendant from performance of his contract by the payment of stipulated damages notwithstanding the same should in fact be wholly inadequate to recompense the plaintiff for the resulting injury. The answer to the question, therefore, is to be found in the intention of the parties, which must be deduced from the whole contract and the surrounding circumstances. Did the parties intend to provide for the payment of liquidated damages as an exclusive remedy at the option of the defendant, which should be accepted in lieu of performance?

"It is often stated that a court of equity will not interfere to prevent a party from doing an act which he has agreed not to do, when liquidated damages are provided in case he does the act. But this must be taken with some qualifications; for it must appear, from the whole contract, that the stipulated sum was to be paid in lieu of the strict performance of the agreement, and was an alternative which the party making the covenant had the right or option to adopt; . . . it is said, in all the cases on this subject, that the question in every case is, What is the real meaning of the contract? And if the substance of the agreement is, that the party shall not do a particular act, and that is the evident object and purpose of the agreement, and it is provided that, if there is a breach of this agreement, the party shall pay a stated sum, which does not clearly appear to be an alternative which he has the right to adopt instead of performing his contract, there would seem to be no reason why a court of equity shall not restrain him from doing the act, and thus carry out the intention of the parties. If such appears to be the purpose of the agreement, the fact that the sum to be paid is a stated or stipulated amount, in the nature of liquidated damages, should not oust a court of equity of its jurisdiction to compel the party to carry out his agreement." *Ropes* v. *Upton*, 125 Mass. 258, 260. See also *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473; *American Ice Co.* v. *Lynch*, 74 N. J. Eq. 298; *Bradshaw* v. *Millikin*, 173 N. C. 432, L. R. A. 1917E, 880, 883; *Ewins* v. *Gordon*, 49 N. H. 444, 456, 457; *Parker* v. *Estabrook*, 68 N. H. 349, 350. "The fact that the contract provides that, in case of breach, the damages shall be as there admitted, does not of itself conclusively establish that the parties contemplated that, upon the breach thereof, damages would be an adequate remedy. It is a question of intention in each case, to be deduced from the whole instrument and the cir-

cumstances, and if it appear that the performance of the covenant was intended, and not merely the payment of damages in case of breach, the contract will be enforced." *Washington Cranberry Growers' Association* v. *Moore,* 117 Wash. 430, 441 (1921). "The rule sustained by the soundest reasoning and the greater weight of authority is — if it is apparent, from the whole instrument and the attendant circumstances surrounding its execution, that the parties intended the performance of the contract, and not the payment of the damages stipulated as the price of non-performance, a breach of the contract will be enjoined. If the intention was to give to the party the option to perform the contract or to pay the stipulated damages then equity will not interfere. . . . In the case at bar, the very life and success of the undertaking in which appellants were engaged depended upon whether or not a considerable number of growers would pool their tobacco for sale through appellants. The clause providing for liquidated damages was not inserted in the pooling contract for the purpose of giving to appellee the right to pay the damages stipulated and dispose of his tobacco otherwise than as provided in his agreement. It was inserted rather as security for the performance of the contract." *Grant County Board of Control* v. *Allphin,* 152 Ky. 280 (1913). See also *Bradshaw* v. *Millikin, supra.*

Construing the contract here in the light of the purpose of the association and its plan of operation we are of opinion that it was not the intention of the parties by the clause in question to give the defendant an option to pay the stipulated sum as the price of non-performance of his contract. The success of the association and the benefit to its members are wholly dependent upon a strict compliance by all parties with the terms of their respective contracts. The damages stipulated were of small value to the association. Performance was of the very gist of the contract. The association must have the milk produced by its members or go out of business. It had no other source of supply, and without this supply it had no excuse for existence. If, however, there were doubt as to the intention of the parties the uncertainty would seem to be cleared up by the "further" express agreement that the plaintiff in case of breach shall be entitled to injunctive relief or to a decree of specific performance. While ineffective to confer jurisdiction this stipulation is persuasive evidence that the association did not intend to waive its right to equitable relief by the stipulation as to damages immediately preceding. The language clearly carries the idea of an additional rather than an alternative remedy. The ruling of the

presiding justice that the agreement for liquidated damages was not intended as an option for the termination of the contract is sustained. This provision of the contract, therefore, neither deprives the court of equitable jurisdiction nor precludes the plaintiff from its right, if otherwise established, to equitable relief.   Like conclusions have recently been reached in construing coöperative marketing contracts containing similar stipulations.   *Pierce County Dairymen's Ass'n* v. *Templin*, 124 Wash. 567, 573 (1923); *Oregon Growers' Co-op. Ass'n.* v. *Lentz*, 107 Or. 561, 580 (1923); *H. Friedberg, Inc.*, v. *McClary*, 173 Ky. 579 (1917); *Dark Tobacco Growers' Ass'n* v. *Dunn*, 150 Tenn. 614 (1925); *Minnesota Wheat Growers' Ass'n* v. *Higgins* (Minn. 1925), 203 N. W. 420.

The defendant's exception to the denial of his motion to dismiss the plaintiff's bill is overruled.

2.  The question next presented by the record is upon the plaintiff's exception to the denial of its prayer "that the defendant be permanently enjoined from marketing, consigning or withholding the milk or other dairy products produced on farms owned or controlled by the defendant in any other manner than in accordance with the terms of said contract."

The plaintiff's prayer for an affirmative decree of specific performance of the contract was denied for the sufficient reason that it would be a cumbersome and expensive process and could be accomplished only by placing the defendant's milk-producing operations in charge of the officers of the court.  The correctness of this conclusion is conceded.  In so far as the plaintiff's alternative prayer for negative relief calls for an order enjoining the defendant from "withholding" his products from the plaintiff, it is but another way of requesting that he be ordered to deliver his products to it.  It calls for action, not non-action.  Affirmative relief having been denied without exception, because of the difficulty of direct enforcement, it follows that, to the extent that the plaintiff's second prayer calls for affirmative relief, it must also be denied.  3 Williston, Contracts, s. 1423, note; *Welty* v. *Jacobs*, 171 Ill. 624, 40 L. R. A. 98, 101.  The further consideration of this exception will, therefore, be had upon the assumption that the words "or withholding" are stricken from the prayer.

No objection, however, appears to be offered to the negative form of the order contemplated by the plaintiff's alternative prayer if the plaintiff is found to be entitled to equitable relief.  It seems to be settled that where obstacles are encountered in the direct enforcement

of contracts by an order for affirmative relief, indirect enforcement may often be accomplished by a decree enjoining acts in breach thereof. *Kann* v. *Company*, 81 N. H. 535, and cases cited. "I think the fair result of the later cases may be thus expressed: If the case is one in which the negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it." *Singer Sewing Machine Co.* v. *Union &c. Co.*, Federal Cases, No. 12904. See also *American Electrical Works* v. *Varley Duplex Co.*, 26 R. I. 295. "While it is practically impossible to compel specific performance of a contract of this nature, there is abundant authority that the court may, by enjoining the contractor from selling his wares to anyone else, place him in a position where his own interest may be powerful enough to induce him to perform his contract." *Phez Company* v. *Salem Fruit Union*, 103 Or. 514, 534 (1921). This form of relief has been applied in cases similar to the case at bar. *Ib.; Harrell* v. *Cane Groceries Co-operative Ass'n*, 160 Ga. 30 (1925); *Washington Cranberry Growers' Association* v. *Moore*, 117 Wash. 430 (1921); *Owen County Burley Tobacco Society* v. *Brumback*, 128 Ky. 137, 142 (1908).

The presiding justice has found and ruled that the plaintiff's prayer for remedy by injunction could not reasonably be granted. This was the determination of a question of fact. *Norris* v. *Clark*, 72 N. H. 442, 443. If supported by any competent evidence, it cannot be set aside except under such circumstances as would authorize the setting aside of the verdict of a jury as against the weight of evidence, *i.e.*, that the result was produced by passion, partiality, or corruption, or that the trier of fact unwittingly fell into a plain mistake. *Ib.*, 444; *Jaques* v. *Chandler*, 73 N. H. 376, 382. When, however, the finding appears upon the record to have been unsupported by the evidence, or to have been based upon untenable grounds, the finding will be set aside. *Twombly* v. *Lord*, 74 N. H. 211, 212; *Ingerson* v. *Railway*, 79 N. H. 154, 159; *Edgerly* v. *Edgerly*, 73 N. H. 407, 408; *St. Pierre* v. *Foster*, 75 N. H. 10, 12; *State* v. *Gross*, 76 N. H. 304, and cases cited. Whether upon the evidence a given conclusion could be reached is, in this jurisdiction, a question of law. *St. Laurent* v. *Railway*, 77 N. H. 460, 464; *Miner* v. *Knight*, 80 N. H. 423, 425.

The ground upon which the conclusion that the injunctive order could not reasonably be granted is expressly stated, viz., "because the defendant's persistence in his breach of duty, were an injunction issued, would result in punishment by fine or imprisonment for him; that such punishments would be neither merited, nor a reasonable remedy for the breach." Hardship may be a sufficient ground for withholding specific relief. *Hunter* v. *Carroll*, 64 N. H. 572, 573, and cases cited; *Eaton* v. *Eaton*, 64 N. H. 493, 498; *Dana* v. *Craddock*, 66 N. H. 593, 595; *Norris* v. *Clark*, 72 N. H. 442, 443; *Willard* v. *Tayloe*, 8 Wall. 557. But the hardship here intended is the hardship to the defendant from the enforced performance of the contract or other enforced compliance with an order, and not the hardship invited by reason of disobedience of the decree of the court. The presumption always is that the defendant will obey the order of court, whereas the finding of the supposed hardship here is expressly predicated upon the presumed persistence of the defendant in the breach of his contractual duty in defiance of the court's mandate. The finding that punishment under such circumstances would "neither be merited nor a reasonable remedy for the breach" is without support in fact or law. It follows that the order denying injunctive relief and the unsupported finding upon which it is predicated must be set aside.

Under the plaintiff's exception to the refusal of the court to grant injunctive relief the question then remains whether or not on the facts of record it conclusively appears that the plaintiff is entitled to an enjoining order. A decree for specific relief is not a matter of right to which a party is entitled upon the proof of his contract, but rests in the sound discretion of the court, which grants or withholds the relief according to the circumstances of the case. *Norris* v. *Clark*, 72 N. H. 442, 443; *Eastman* v. *Plumer*, 46 N. H. 464, 478; *Ewins* v. *Gordon*, 49 N. H. 444, 464; *Pierce* v. *Morse*, 65 N. H. 196, 198; *First National Bank* v. *Bank*, 71 N. H. 547, 551; *Bow* v. *Farrand*, 77 N. H. 451, 452. This discretion is not, however, of an arbitrary and capricious character, but one governed as far as may be by the general rules and principles of equity. *Eckstein* v. *Downing*, 64 N. H. 248, 259. "No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice

to either of the parties." *Willard* v. *Tayloe*, 8 Wall. 557. The exercise of the court's discretion is but a finding of fact as to whether or not granting the relief prayed for would be equitable in view of all the circumstances of the particular case. *Eckstein* v. *Downing*, *supra; Norris* v. *Clark*, *supra; Orestes* v. *Galanis*, 78 N. H. 514. This fact has not been found. The decree does not purport to state all the material facts, and the evidence is not transferred. We cannot, therefore, say that upon the unreported evidence it might not appear that the enforcement of the decree would impose upon the defendant some hardship out of proportion to the benefits accruing therefrom to the plaintiff. If the granting of equitable relief should be found to be otherwise justified it may still appear to the court, notwithstanding the plaintiff has been reasonably expeditious in prosecuting its bill, that, with less than three months of the life of the contract to run, the advantage of applying the remedy would be of such small practical value to the plaintiff and so large a detriment to the defendant as to induce the court to stay its power to enforce performance of the contract. It follows that the case must be returned to the trial court for further consideration.

In view of the fact that a further hearing must be had, the question raised in argument whether the contract is opposed to public policy has been considered. Coöperative marketing agreements containing the essential features of the contract here considered have been recognized in many of our states as a legitimate means of protecting members against oppression, of avoiding the waste incident to the dumping of produce upon the market with the consequent wide fluctuations in prices, and of securing to the producer a larger share of the price paid by the consumer for his products. Associations of this character exist in practically all of our states and deal in nearly every form of agricultural product. From year to year the coöperative idea in marketing has been assuming wider scope and greater economic importance. Public approval of such coöperative organizations is evidenced by the adoption of enabling legislation in more than two-thirds of the states, including our own (Laws 1925, c. 33), as well as by the Congress (U. S. Comp. St. Ann. Supp. 1923, ss. 8716½, 8716½a). See Columbia Law Review, February, 1923, *p.* 91; *Co-op. Ass'n* v. *Jones*, 185 N. C. 265, 270. Such legislation has received liberal construction by the courts. *Minn. Wheat Growers' Association* v. *Huggins* (Minn. 1925), 203 N. W. 420 *et seq.* No sufficient ground appears from the record for holding that the contract here under consideration is contrary to public policy.

3. The question presented by the defendant's exception to the order that he pay expenses of five hundred dollars involves a further construction of the contract. After stipulating for liquidated damages and for equitable relief in case of the defendant's breach, section 7 of the contract then provides that: "If the Association brings any action whatsoever by reason of a breach or threatened breach hereof the Member is to pay the Association all costs of court, costs for bonding and otherwise, expenses arising out of or caused by litigation, including any reasonable attorney's fee expended or incurred by the Association in such procedure, and all such costs and expenses shall be included in the judgment and shall be entitled to the benefit of any lien securing any judgment hereunder." By this language it was intended that the defendant member should be charged with the enumerated costs and expenses in case the plaintiff should prevail either upon a suit to recover the stipulated damages or upon a petition to compel compliance with the contract, or upon both.

The plaintiff's bill is brought to compel specific performance of the contract. In view of the defendant's expressed readiness at all times to pay the amount of the stipulated damages it could have had no other justifiable purpose. A court of equity having taken jurisdiction of a controversy administers all relief which the nature of the case and the facts demand. *Manchester Amusement Co.* v. *Conn*, 80 N. H. 455, 461. The court will, therefore, order judgment for the liquidated damages which are both found and conceded; but it will not merely as an incident thereto allow expenses of five hundred dollars, since it could not be found that that sum was incurred in a reasonable attempt to collect damages which were admitted to be due. We are not here concerned with the considerations which might have governed in an action at law to recover the stipulated damages in the face of a tender rendered ineffective by accompanying conditions. Judgment for expenses, if any here, follows, not as an incident to the order for the payment of the stipulated damages, but as an incident to the right to equitable relief. Consequently, if the court upon further consideration finds that the plaintiff was entitled to such relief at the time it filed its bill, the order for expenses will be sustained; otherwise it will be set aside. A finding that an enjoining order should be withheld solely by reason of the short time the contract has yet to run will not affect the plaintiff's right to recover such expenses, since this finding goes merely to the inadvisability of now applying the remedy to which the

plaintiff was, at the time of filing its bill, equitably entitled. The order of court as to the allowance of expenses will be sustained, annulled or modified in accordance with these views.

*Decree set aside.*

All concurred.

SNOW, J. Upon motion for rehearing it is alleged by the plaintiff that the contract, instead of expiring on March 1, 1926, as indicated by the record, does not in fact expire until March 1, 1927, and that this fact is admitted in the pleadings. As the case is returned to the trial court for further hearing, it seems unnecessary to amend the record here. While the fact may have an important bearing upon the discretionary action of the trial court there seems to be no reason why it cannot be given due weight under the principles here announced.

*Motion denied.*

All concurred.